No. 35,289

Frank Froelich, Individually and as Trustee Under the Last Will and Testament of Anna Froelich, Deceased, *Appellee*, v. (Ella Froelich et al., *Appellees*) Clara Froelich et al., *Appellants*.

(122 P. 2d 759)

Opinion filed March 7, 1942.

*Matt Guilfoyle*, of Abilene, argued the cause, and *Thornton D. Scott*, of Abilene, *Earl H. Hatcher*, of Topeka, *D. M. McCarthy* and *Kathryn O'Loughlin McCarthy*, both of Hays, were on the briefs for the appellants.

*Jerry E. Driscoll*, of Russell, argued the cause, and *Harold W. McCombs*, of Russell, was on the briefs for the appellees.

The opinion of the court was delivered by

Thiele, J.: The present appeal grows out of a controversy as to the ownership of three hundred twenty acres of land in Ellis county

and as to who is entitled to shares in moneys arising from an oil and gas lease thereon. The land is hereafter referred to as the real estate.

As commenced, the action was one for a declaratory judgment as to who were devisees under the will of Anna Froelich, but under answers and other pleadings there was presented not only the construction of the will, but whether there had been a settlement as to ownership of the real estate and the moneys arising under the oil and gas lease. The appeal pertains to these matters only and we need not mention some other matters which engaged the trial court's attention but are not material here.

After hearing the evidence the trial court made findings of fact and conclusions of law upon which it rendered judgment that seven of the defendants, all of whom were children of Henry Froelich, deceased, were not devisees under the will of Anna Froelich, and they appeal.

Appellants do not complain of the findings of fact, but only of the conclusions of law based thereon, and if their contention is sustained it is not necessary to notice assignments of error with respect to other matters.

As the findings of fact are long and cover matters not of present importance, we shall summarize rather than quote them.

Anna Froelich at the time of her death on November 18, 1919, owned the particular real estate and other real and personal property. She was survived by four sons, three daughters and the children of her son Henry, who had died on March 24, 1919. On July 15, 1919, Anna Froelich made her will, and after her death and on November 24, 1919, it was duly admitted to probate, the executors therein named duly qualified, the estate was administered, and on May 1, 1922, the administration was closed and the executors discharged. Under the will, Anna Froelich made specific bequests to her church and to an orphans' home and provided for the erection of a tombstone on her grave. She also made a specific devise of certain real estate, other than that herein involved, to her daughter Anna on conditions which seem to have been met. The sixth paragraph of her will referred to the land presently involved, and provided that so long as her unfortunate son George lived the land was to be rented and the income used for his support, and that her son Frank should look after George. It was then provided that after the death of George the farm should be sold, and the proceeds, together with all other unexpended moneys, credits or other property, whether real, personal or mixed, "I give, devise

and bequeath to all of my children, share and share alike, after all of the foregoing bequests shall have been first paid," and she further provided that if her son Charley died before a distribution was had his share should go to his children by his first and second marriages. The court found that after the mother's death certain of the children had died, leaving certain named heirs, and that some of them had made conveyances of their interests, but the regularity thereof not being now important we do not detail these changes. In April, 1921, a partial distribution of the estate was made under order of the probate court and an undivided one-seventh of the moneys disbursed was paid to the children of Henry Froelich. On final settlement of the estate on May 1, 1922, under order of the probate court the balance then on hand was distributed, the Henry Froelich children receiving an undivided one-seventh. After the closing of the estate, Frank Froelich and Henry Hoff, who were the executors, as self-styled trustees, continued to rent the lands and made provision for the son George until his death on April 13, 1931. Just when Henry Hoff ceased to act does not appear from the findings, but Frank Froelich continued to rent the land and to make distribution to the parties, including the Henry Froelich children. On May 26, 1936, two oil and gas leases covering all of the real estate were executed, by the then owners, the children of Henry Froelich joining in both leases, a producing well was brought in and they joined in division orders and began receiving an undivided one-seventh of the lessors' share of the oil runs. The court further found that prior to August, 1937, all the parties believed the Henry Froelich children were entitled to a one-seventh share of the estate. In the latter part of 1937 or the early part of 1938 the oil company purchasing the oil raised some question as to the interest of the Henry Froelich children and they procured counsel who prepared a deed from the other heirs to them for a one-seventh interest. When this deed reached the plaintiff he stated he wouldn't sign a deed for them unless they would sign one for him and a second deed was prepared. The second deed was prepared by plaintiff's own counsel and in reliance on plaintiff's own statement as to title, etc. This latter deed referred to the Anna Froelich will, and provided that in consideration of the mutual covenants and agreements contained each party agreed with the others that the persons named owned in fee simple the undivided interest set opposite the name of each, this being followed by a list of the owners as of that date and their shares and including the seven children of Henry Froelich by name

and showing each to be the owner of a one-forty-ninth undivided interest. The deed further provided that the oil runs should be settled on the same basis. The first signatures to this deed were procured September 24, 1938, the last on June 2, 1939. Although not found as a fact, the pleadings disclose this deed was filed for record on June 3, 1939. The present action was filed June 28, 1939.

So far as necessary to notice, the trial court's conclusions of law were as follows: The will of Anna Froelich, executed July 15, 1919, leaves the property to her children, and her son Henry having died about four months before the will was made, his children took nothing under their grandmother's will; that while family settlements are favorites of the law, it is necessary there be a consideration to render them valid, but in this case no family settlement was made, but the parties by mutual consent, based upon a mistake as to the rights conferred by the will, shared the income for a long period of time; that the deed merely confirmed the interests which the parties, other than the Henry Froelich children, then supposed they had in the land; that the Henry Froelich children gave nothing for any interest in the land, nor did they suffer any loss or detriment for their execution of the deed, and that the deed merely attempted to confirm rights as to them that did not in fact exist; that they had nothing to convey; there was no consideration for the deed and it was a nullity, and the court found the interests of the parties other than appellants on that basis and ultimately rendered judgment accordingly. Motions directed against the conclusions of law and for a new trial were denied and the children of Henry Froelich appeal.

The specifications of error include and the briefs cover not only appellants' contention that they are beneficiaries included within the word "children" as used in the will, and other matters, but also a contention the trial court erred in concluding the family settlement evidenced by the deed was not valid and enforceable. As we think a determination of the last contention is decisive of the appeal, we shall not discuss the other contentions.

The trial court recognized that family settlements are favored in law, but it was of the opinion the parties were mistaken as to their rights and there was no consideration for the settlement.

The binding force and effect of family settlements have been considered in many cases. In 12 C. J. 322 it was said:

"Compromises having for their object the settlement of family difficulties or controversies are favored at law and in equity if at all reasonable. The

termination of such controversies is considered a valid and sufficient consideration for the agreement, and the court will go further to sustain it than it would under ordinary circumstances. Accordingly, it has been laid down as a general rule that a family agreement entered into on the supposition of a right, or of a doubtful right, although it afterward turns out that the right was on the other side, is binding, and the right cannot prevail against the agreement of the parties."

(See, also, 26 C. J. S. 1108 et seq.; 11 Am. Jur. 258, and notes in 38 A. L. R. 734, 759, 54 A. L. R. 976, and 118 A. L. R. 1357.)

In *West v. West*, 135 Kan. 223, 9 P. 2d 981, the husband left a will giving all his property to four children by his first marriage. He gave nothing to his second wife, who survived him. After his will was admitted to probate, and prior to her election, she made certain statements as to her desires and a contract was made whereby she received a share less than she would have received had she elected to take under the statute of descents and distributions, and in substance, she filed an election to that effect. Later she sought to avoid the contract. Without detailing the reasoning, this court held the contract not lacking in consideration and legal and binding on the parties to it.

In *Myers v. Noble*, 141 Kan. 432, 41 P. 2d 1021, a review was made of many of our decisions, and it was there held:

"Beneficiaries under a will have the right and power to contract between themselves for distribution of their respective portions of the estate in a manner different from that provided in the will; and such an agreement containing the mutual promises of the contracting parties is based upon a sufficient consideration." (Syl. ¶ 1.)

A harsher rule is applied where the question of compromise and settlement does not affect family rights. In an action involving a settlement of a claim for personal injuries, this court, in *Reed v. Kansas Postal Telegraph & Cable Co.*, 125 Kan. 603, 264 Pac. 1065, held:

"Where one in good faith asserts a claim not obviously invalid, worthless or frivolous, and which might be thought to be reasonably doubtful, the forbearance to prosecute such a claim will furnish a sufficient consideration for a promise of settlement and compromise of such claim." (Syl.)

In discussing whether the facts found compel a conclusion a valid settlement had been made, we do not overlook the contention of the appellee that certain witnesses stated there had been no controversy. Those statements, however, cannot be isolated from other testimony, and the facts found refute any conclusion there was no controversy. We shall review the findings very briefly. When the order of par-

tial distribution of April, 1921, and the order 'of final settlement of May, 1922, were made the probate court expressly included appellants as distributees, and neither the appellee or any other person affected appealed. Those orders pertained to personal property and became final. Under the will, the beneficiaries were not to receive real estate—the real estate was to be sold and the proceeds divided, and had that been done, the right and claim of appellants to share therein would likely have been determined and concluded by the order of the probate court on final settlement. The fact the real estate was not sold, that the proceeds were not on hand for division, and that a reconversion may be said to have taken place, certainly does not compel an indubitable conclusion that the appellants would not share. It also appears that for some years appellants were recognized by appellee and others as having an interest in the real estate. All of them joined in the oil and gas leases, and after a production was had, they joined in division orders, and appellants participated in the distribution of the lessors' share of the oil runs. Up to this time there was no controversy. Appellee and others in interest dealt with appellants as though the latter's interest was unassailable. Only after the corporation purchasing the oil raised the question was there any doubt cast upon the interest of the appellants and then when appellants pressed for a recognition of their rights, appellee refused unless his rights were fixed. He then consulted counsel, told him as to the title, the will of Anna Froelich, etc., and his counsel prepared the deed which was subsequently executed, delivered and made a matter of record, and which is now under attack as being without consideration. In addition to the above there was also to be considered appellants' claim that they were included within the term "children" as used in the will. (For substantial authority that such claim might be good see notes 3 A. L. R. 1682, 104 A. L. R. 282.)

Under the whole situation the possibilities of litgation and an uncertain result to any of the parties interested were apparent. It seems clear that appellants asserted their claims in good faith; that the claims were not obviously worthless or frivolous; but that on the other hand they were substantial. It cannot detract from any settlement that they got more or less than they would have received at the end of a lawsuit, or that they received exactly what they would have taken had the entire matter been tried out. Neither

would the settlement be bad because the other parties might have received more had an action been instituted and tried to a conclusion. The very purpose of such a settlement is to avoid the costs and uncertainties attendant upon litigation.

In our opinion the settlement evidenced by the deed was supported by a sufficient consideration and was valid and binding upon the parties.

For the reason that parts of the judgment rendered below are not in question here, we do not discuss those parts, but insofar as the judgment affects the rights of the appellants it is reversed and set aside and the cause remanded with instructions to the trial court to render judgment in favor of appellants and consistent with this opinion.

ALLEN, J., dissents.

HOCH, J., not participating.