No. 37,276

T. G. ROGERS and JOHN R. ROGERS, doing business as THOMAS ROGERS & SON NURSERIES, *Appellees,* v. WILLIAM F. DUMAS and MARY DUMAS, *Appellants,* and A. L. HARMON, *Appellee.*

(203 P. 2d 165)

Opinion filed March 5, 1949.

*Ray H. Tinder* and *Austin M. Cowan,* both of Wichita, argued the cause and were on the brief for the appellants.

*Wm. C. Kandt,* of Wichita, argued the cause, and *Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, Lawrence E. Curfman* and *Byron Brainerd,* all of Wichita, were with him on the brief for appellees T. G. Rogers and John R. Rogers; *C. H. Morris* and *Lee Garrett,* both of Wichita, were on the brief for appellee A. L. Harmon.

The opinion of the court was delivered by

PRICE, J.: T. G. Rogers and John R. Rogers, doing business as Thomas Rogers & Son Nurseries, brought this action for a declaratory judgment to determine the validity of the terms and conditions of a certain lease agreement covering five acres of land formerly owned by A. L. Harmon and Georgia Lee Harmon, his wife, which land was subsequently conveyed by the Harmons to defendants, Wm. F. Dumas and Mary Dumas, his wife, to determine the disposition of rent money due and to become due under the lease agreement, and to settle actual controversies existing among the parties so as to allow to plaintiffs, lessees therein, peaceable possession of the premises under the lease agreement. For convenience the appellees Rogers will be referred to as plaintiffs and the appellants Dumas as defendants.

From a finding in favor of the plaintiffs the defendants have appealed.

For some time prior to November, 1945, plaintiffs had been operating a retail nursery business on a five-acre tract which they leased from one Williams, the owner. On November 12, 1945, Williams conveyed to A. L. Harmon and Georgia Lee Harmon, husband and wife, as joint tenants with right of survivorship and not as tenants in common. Shortly thereafter the Harmons and plaintiffs entered into an agreement whereby the Harmons leased this tract to plaintiffs. The written lease was signed on November 20, 1945, by both of the Rogers and by A. L. Harmon but was not signed by Georgia Lee Harmon, his wife, who was in Texas at the time. This lease was for a basic five-year term with option to renew for an additional five years, the rent being payable in semi-annual installments of $120 each on or before March 24th and September 24th of each year. The lease also contained an option in favor of the plaintiff lessees to purchase one certain designated acre upon which their buildings were located and a further option to purchase the entire five acres. Plaintiffs continued in possession of the premises under the lease and paid the rent money to A. L. Harmon, during which time they constructed driveways, erected buildings, planted shrubbery and made other substantial permanent improvements on the land, at all times continuing the operation of the nursery business. This lease was not recorded until February 27, 1947.

In September, 1946, the defendants Dumas, through their real estate agent, began negotiations with A. L. Harmon for the sale or exchange of the premises in question. On November 4, 1946, the deal was consummated and a warranty deed was on that date given by the Harmons to the Dumases to the north four acres of the five-acre tract under lease to the plaintiffs, together with other adjoining property. During their negotiations for the purchase of this property the defendants Dumas and their real estate agent were on the premises, knew that plaintiffs were holding under a lease from the Harmons and discussed with plaintiffs the terms of the lease. They also discussed the matter with A. L. Harmon. The evidence is in dispute as to whether the Dumases were apprised of *all* the terms of the lease prior to the time they closed their deal with Harmons for the purchase of the property.

On or about September 15, 1946, plaintiffs paid the September installment of rent to A. L. Harmon. At the time the Harmons and Dumases closed their deal in November, 1946, the latter demanded of Harmon this installment of rent by reason of its being a rental payment in advance under the lease to plaintiffs. Harmon paid it over to the Dumases who retained it. In December, 1946, defendants Dumas served on plaintiffs a notice to vacate the property in question, which notice, among other things, stated that they had purchased the property subject to plaintiffs' rights under their lease of November 20, 1945. This notice was rescinded and withdrawn on January 24, 1947, and on the next day Dumases had served on plaintiffs a "Notice to Quit and Termination of Farm Tenancy." In March, 1947, at about the time the March installment of rent fell due, the plaintiffs, with the knowledge that Dumases then owned four acres of the premises and the Harmons one acre, tendered four-fifths of the rent to the former and one-fifth to the latter. Each refused to accept the rent so allocated. The lease provided that it would terminate in the event any installment of rent should remain unpaid for more than thirty days after its due date. Following such apportionment, tender and refusal of this March, 1947, rent installment the plaintiffs on April 9, 1947, brought this action for a declaratory judgment to determine their rights, and paid the rent money into court.

Considerable evidence was introduced but with the exception of the question as to the extent of knowledge by defendants Dumas of the terms of the lease prior to and at the time they purchased

the property from the Harmons there really is not much dispute as to the facts. The trial court rendered findings of fact and conclusions of law all in favor of plaintiffs, upholding in all respects their rights under the lease in question.

Numerous grounds for reversal are urged by appellants Dumas but as we view this case the whole matter can be boiled down to the question of the validity of the lease under which plaintiffs are holding. The gist of appellants' argument is that since Georgia Lee Harmon did not sign the lease it is therefore invalid under the statute of frauds (G. S. 1935, 33-105, 33-106) and they as grantees of the Harmons are entitled to assert whatever rights Mrs. Harmon would have in the matter.

Mrs. Harmon was called as a witness in behalf of the plaintiffs and testified that she was in Texas at the time the lease was signed; that she knew there was a lease on the premises to plaintiffs at the time she and her husband purchased the property; that she knew her husband was contemplating giving a lease to plaintiffs; that she and her husband has discussed the matter, its terms, the option, and the amount of rent; that she had no objection whatever to the lease or its terms; that she had no intention of ever living on the property as a home; that the lease was read to her and that she had no objection to it at the time and had not objected since; that she was willing to sign the lease at the time it was given but did not do so because she was out of the state and that it was never presented to her for her signature after her return.

The court in its findings found these facts to be true and further found that she had benefited from the rent money paid under said lease to her husband by reason of his support of her. As a conclusion of law the court decreed that she and her successors in interest were estopped from asserting that the lease was invalid by her failure to sign the same.

As to the defendants Dumas the court found that prior to their purchase of the property they knew the plaintiffs were in the open and actual possession of the premises; that the terms and conditions of the lease had been discussed by them with the plaintiffs; that with due diligence they could have acquired further information from A. L. Harmon or from plaintiffs' attorney to whom a signed copy had been delivered for recording and that defendants had recognized the rights of plaintiffs by their acceptance of rent money from A. L. Harmon and by the notices to quit served on

plaintiffs. The court concluded as a matter of law that they were estopped from denying the validity of the lease.

Could it successfully be argued that Georgia Lee Harmon is in a position to renounce and deny the validity of the lease to the plaintiffs in the face of the evidence showing her knowledge of its terms, her acquiescence and consent both before and after its execution, her acceptance of its benefits and performance on the part of plaintiffs? We think not. The statute of frauds was enacted to prevent, and not to foster, injustice. (*McCullough v. Finley*, 69 Kan. 705, 77 Pac. 696; 19 Am. Jur., Estoppel, §§ 57, 61, 62; *Gas Service Co. v. Consolidated Gas Utilities Corp.*, 145 Kan. 423, 435, 436, 65 P. 2d 584.) But the real question before us is whether the defendants Dumas can successfully hide behind the fact that Mrs. Harmon failed to sign the lease so as to permit them to defeat the rights of the plaintiffs under the lease agreement.

This opinion might well end with the statement that since the defendants Dumas acquired by their deed no greater rights than those possessed by their grantors, the Harmons, they are therefore in no position to deny the rights of the plaintiffs under the lease. But let us go one step further and examine the question. The evidence clearly showed that during their negotiations for the purchase of the property they knew about the lease to the plaintiffs although, as before stated, the testimony as to the extent of their knowledge concerning all the terms and conditions of it is in dispute. They knew plaintiffs were in open and actual possession under the lease and considerable discussion as to its terms took place. Under these facts ordinary business prudence should have prompted them, in the exercise of ordinary diligence and understanding, to pursue such reasonable inquiry as would have given them full knowledge of all terms and conditions of the lease. They are not innocent purchasers for value without notice of the rights of plaintiffs and are in no better position than Mrs. Harmon, their grantor and predecessor in interest. And certainly they cannot renounce the lease for her and against her testimony indicating her consent. The Harmons are not complaining and both testified for the plaintiffs. Normally, the statute of frauds is not available to those not parties to the contract. (*Haas v. Nemeth*, 139 Kan. 252, 31 P. 2d 6.) The law does not permit a person to close his eyes to facts that he cannot otherwise fail to see for the purpose of remaining in ignorance of

them and thus acquire an unjust advantage. Here the defendants are to be charged with full knowledge of all terms of the lease (*Comstock v. Robertson,* 72 Kan. 465, 83 Pac. 1104; *Federal Savings & Loan Ins. Corp. v. Urschel,* 159 Kan. 674, 681, 157 P. 2d 805), and are estopped from denying the rights of the plaintiffs thereunder.

The rulings of the lower court on the demurrers to the petition, in striking appellants' cross petition against defendant, A. L. Harmon, on appellants' demurrer to plaintiffs' evidence, as to the admissibility of evidence and as to its findings—all have been examined—and we find no error.

In conclusion, perhaps mention should be made of another alleged trial error. The court was requested to make findings of fact and conclusions of law in accordance with the statute (G. S. 1935, 60-2921). Counsel for each side submitted suggested findings and conclusions as is customarily done. The court, after having the case under advisement, notified counsel by letter that it was finding for plaintiffs and adopting the findings of fact and conclusions of law requested by them. Appellants argue that such practice violates the spirit and letter of the statute and that the court should have made its *own* findings. In the nature of things we assume that the trial court judge studied plaintiffs' requested findings and agreed that they correctly stated the facts as he himself found them to be; otherwise, he would not have adopted them as his own. The findings were separately numbered and were rendered separately from the conclusions of law in compliance with the statute. We are unable to agree with counsel that such procedure was erroneous.

Our holding in this case disposes of and renders it unnecessary to discuss plaintiffs' cross-appeal from the order striking one conclusion of law. From a careful examination of the whole record before us we are convinced that the trial court committed no reversible error, and the judgment is affirmed.

ARN, J., not participating.