No. 41,578

BETTY SHIRK, a/k/a BETTY SHIRK O'BRIEN, *Appellant,* v. WILLIAM S. SHIRK and CLAIRE SHIRK, *Appellees.*

(348 P. 2d 840)

Opinion filed January 23, 1960.

*Evart Mills,* of McPherson, argued the cause and was on the briefs for the appellant.

*Emmet A. Blaes,* of Wichita, argued the cause, and *James A. Cassler,* of McPherson, and *Roetzel Jochems,* of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: Plaintiff (appellant), Betty Shirk O'Brien, brought this action against defendants (appellees), William S. Shirk and Claire Shirk, to recover damages sustained on account of alleged fraud and deceit practiced by them against plaintiff, causing her to waive her right to contest her mother's will. Plaintiff and defendant William are sister and brother and the only heirs at law of their mother, Gertrude McCourt Shirk, deceased. Claire is the wife of William. Plaintiff appeals and contends the trial court erred (1) in striking paragraph 12 from her amended petition, (2) in making William S. Shirk in his capacity as executor a party defendant and (3) in sustaining defendants' demurrer to the first cause of action of her second amended petition.

The lengthy petition as amended will be summarized insofar as necessary to determine the questions involved: Plaintiff alleged that Gertrude McCourt Shirk died September 17, 1957, survived by her two children, plaintiff, Betty Shirk, and defendant William S. Shirk, who were her sole and only heirs at law; that on September 19, defendant William filed a petition for the probate of his mother's will and at the same time petitioned for and was appointed special administrator of the estate and was subsequently appointed executor thereof; that plaintiff, not having received immediate notification of her mother's death, arrived in McPherson September 21, thirty minutes after the funeral; that by reason of shock and bereavement, she was distressed and unnerved and physically and mentally unfit to transact business; that the same evening William took plaintiff to her mother's former office and told her their mother's will was then being probated, asking her not to talk to anyone but himself and Mr. Cassler, stating the latter was her attorney also, and that, according to the will, she was to receive $100 a month and her two children were to receive about $15,000 each for educational purposes. Plaintiff said that amount was not enough for her and asked what would happen if she broke the will. Defendant stated that she could not break the will because Mr. Cassler made it and if she tried she would not get anything. "Defendant then told plaintiff: 'I am your big brother, Betty.' 'You can trust me.' 'You do what I tell you.' 'I'll always help you and look after you.' 'I'll never let you starve.' 'You have nothing to worry about.' 'I'll take care of you.' 'I can get you anything you want through the necessitous clause.' . . . 'You are going to need some money and you will not be able to get a cent out of the estate for about a year unless you sign some papers, which are just legal red tape to get the money.' "

It was further alleged that the next day defendants took plaintiff to their church, then to their home, where she had dinner and spent the afternoon and evening with them, and while there defendants both stated to plaintiff that they would always look after and help her, that she should trust them and should not talk about or discuss her mother's will and the estate matters with outsiders, that she should do whatever William told her to do with regard to the will.

Plaintiff also alleged that the following morning defendant Wil-

liam took her to Mr. Cassler's office, attorney for William individ-
ually and as special administrator of the estate, where there were
prepared and she signed a petition to probate the will, a petition
for allowance of a bequest, a claim against the estate and an as-
signment of that claim to William, after which William took her
before the probate judge and she verified the instruments, which
were then filed.

Plaintiff further alleged that prior to and at the time the will was
made, defendants William and Claire exercised certain acts of undue
influence over her mother, who was suffering from various physical
ailments which destroyed her mother's free agency in the making
of the will, and by reason of said acts the mother willed four-fifths
of her property to defendant William and his children and such
will would not have been admitted to probate if it had been con-
tested and opposed by the plaintiff.

It was further alleged that defendant William remained with
plaintiff September 21, 22 and 23 to prevent her from discussing her
mother's will with anyone or from receiving any independent or
legal advice and from discovering that the will was the product of
defendants' undue influence and fraud and was invalid; that de-
fendants William and Claire made the representations as set forth
in the petition for the purpose of inducing plaintiff to make and
execute the aforementioned instruments so that she would thereby
recognize said will and accept some benefits thereunder; that the
petition to probate her mother's will and the petition for allowance
of bequest were unnecessary. Paragraph 11 reads:

"Plaintiff did not know that the petition for probate and the execution of
said instruments together with her receiving of money provided under the
terms of the will constituted and was an election to take under the will and
that she could not elect to take under the will and also at the same time con-
test the validity of said will of Gertrude McCourt Shirk. That if plaintiff had
known, or had been told, of the legal effect of such acts, she would not have
signed said instruments nor accepted the payments provided in said will."

It was further alleged that while discussing her mother's estate
plaintiff reposed her complete trust and confidence in defendants
William and Claire and followed their request to sign the instru-
ments they had had prepared for her, believing they were "just legal
red tape to get on with the estate"; that by reason of the deceit and
fraud of defendants and their breach of her trust and confidence
she, in reliance thereon, petitioned for the probate of the will, ac-
cepted benefits thereunder and elected to take under said will in-

stead of contesting it; that her mother died possessed of property of the value of approximately $550,000 and if the will had been contested, plaintiff, as a daughter and heir to one-half the estate, would have been entitled to an amount in excess of $200,000; that by reason of the fraud and deception practiced against her, which caused her to take under the will instead of contesting it, she was damaged.

Paragraph 12 of the amended petition struck by the trial court alleged that William's statements to Betty that he would always help and look after her were false and fraudulent, in that, subsequently while using the facilities of the hotels belonging to the estate, when she was in destitute and necessitous circumstances, William demanded payment of her for rent and then bodily and physically ejected her from the hotel.

Defendants' demurrer raises the question of whether the facts stated in the petition constituted a cause of action. It has been a long standing rule of this court, supported by many decisions, that the allegations of a petition when tested by a demurrer are to be taken as true, the pleader being entitled to all favorable inferences that may be drawn from the facts pleaded. (*Merchant v. Foreman*, 182 Kan. 550, 555, 322 P. 2d 740.) Moreover, while good practices require the plaintiff's initial pleading to proceed on a single and definite theory, under modern code systems the pleading will be held sufficient if it states a cause of action on any theory. (*Crabb v. Swindler, Administratrix*, 184 Kan. 501, 337 P. 2d 986.) In view of the foregoing, we will review the sufficiency of the petition as amended.

Plaintiff's petition as amended charged defendants with all the essential elements of actionable fraud. She alleged the making, falsity and materiality of the representations, defendants' knowledge of their falsity, defendants' intention that they should be acted upon by plaintiff in the manner contemplated by them, plaintiff's ignorance of their falsity, plaintiff's rightful reliance on their truth and the resultant damage to her. These allegations form a sufficient basis for the maintenance of this action. Where false statements and representations of fact are made for the purpose of inducing one to part with a valuable right, when relied upon, they are actionable. One who has suffered damage by reason of fraud or deceit of another has the option to rescind the transaction consummated by the fraud and to proceed to recover on that basis, or to waive

the right to rescind and sue to recover such damages as he may have suffered in consequence of the fraud. (*Ware v. State Farm Mutual Automobile Ins. Co.,* 181 Kan. 291, 311 P. 2d 316.)

In the instant case, plaintiff was fraudulently induced to forego an action to contest her mother's will on the premise that the defendants would look after and take care of her, as hereinbefore set forth. Paragraph 12 of the amended petition struck by the court alleged the defendants' breach of this agreement. For the purposes of the demurrer, it is not material here to determine if the plaintiff is going to proceed in her action to recover damages for the tortious conduct of the defendants or for a breach of contract. As stated, the petition stated facts sufficient to constitute a cause of action on either theory. We are of the opinion that the court erred in striking paragraph 12 from the amended petition. The plaintiff's forbearance from contesting her mother's will was sufficient consideration to support defendants' contract with her that they would take care of and look after her. (*Greiner v. Greiner,* 132 Kan. 507, 296 Pac. 349; *Paton v. Paton,* 152 Kan. 351, 103 P. 2d 826.)

Defendants contend that this was an action to contest a will and it therefore comes within the rule of *Axe v. Wilson,* 150 Kan. 795, 96 P. 2d 880. As heretofore stated, this was not an action to contest a will. It was an action to recover damages for fraud and deceit and breach of contract, and *Axe v. Wilson,* supra, is not controlling, at least at this stage of the proceedings. In *Foster v. Humburg,* 180 Kan. 64, 67, 68, 299 P. 2d 46, we said:

"While allegations of damages are essential in a petition, they do not constitute the 'cause of action.' The 'cause of action' is the wrong done, not the measure of compensation for it, or the character of relief sought. A 'cause of action' arises from a manifestation of a right or violation of an obligation or duty. (*Friederichsen v. Renard,* 247 U. S. 207, 62 L. Ed. 1075, 38 S. Ct. 450; *Travelers Fire Ins. Co. v. Ranney-Davis Mercantile Co.* [10th Circuit], 173 F. 2d 844; *Wright v. Brush,* 115 F. 2d 265.) Damage is not the cause of action. It is merely a part of the remedy which the law allows for the injury resulting from a breach or wrong. The 'right of action' is merely the right to pursue a remedy, and the 'cause of action' is the concurrence of the facts giving rise to an enforceable claim. (*United States v. Standard Oil Co. of California,* 21 F. Supp. 645.) In the instant case the original petitions, absent paragraphs 7 and 8, stated a cause of action against the defendants.

"A mere failure of a petition to allege facts showing the correct measure of damages does not render the petition bad as against a demurrer. If the petition discloses a cause of action for recovery of damages, it does not

fail to state a cause of action simply because the plaintiff attempted to apply an improper rule for the measure of damages sustained. It is the duty of the court on the trial of the action to apply the correct rule, whatever that rule may be under the evidence as disclosed in the case. (*Jones v. Cedartown Supply Company*, 65 Ga. App. 80, 15 S. E. 2d 268.)"

This having been an action for damages against defendants, William S. and Claire Shirk, as hereinbefore related, no cause of action was stated against William S. Shirk in his capacity as executor and no relief was asked from him as such, and the lower court erred in sustaining a motion making him a defendant.

In view of what has been said, the judgment of the trial court is reversed and the case is remanded with instructions to reinstate paragraph 12 of the amended petition, to dismiss William S. Shirk, executor of the estate of Gertrude McCourt Shirk, deceased, as party defendant, and to set aside its judgment sustaining defendants' demurrer and direct defendants to answer.

It is so ordered.