No. 42,655

CELESTINE P. SCHIFFELBEIN, *Appellant*, v. SISTERS OF CHARITY OF LEAVENWORTH, a Corporation, doing business as St. Francis Hospital, *Appellee*.

(374 P. 2d 42)

Opinion filed August 28, 1962.

*Ralph E. Skoog*, of Topeka, argued the cause and *J. A. Dickinson, Sam A. Crow* and *Bill G. Honeymon*, all of Topeka were with him on the briefs for the appellant.

*Ralph W. Oman*, of Topeka, argued the cause and *Robert L. Webb, Philip E. Buzick, William B. McElhenny, James D. Waugh, James L. Grimes, Jr., Donald J. Horttor* and *James L. Berglund*, all of Topeka, were with him on the briefs for the appellee and cross appellant.

The opinion of the court was delivered by

JACKSON, J.: This appeal is one from the order of the trial court sustaining the defendant's demurrer to the plaintiff's second amended petition and rendering judgment for the defendant for its costs.

The appellant filed his petition in the district court of Shawnee county against the Sisters of Charity of Leavenworth and St. Francis Hospital. The plaintiff seeks to recover the sum of $122,000.00 from

the defendant due to an alleged breach of an oral contract for lifetime employment which the plaintiff contends was made between him and Sister Mary George acting within her apparent authority as administrator and agent of the defendant, Sisters of Charity.

To the second amended petition the appellee-defendant, Sisters of Charity, demurred for the reason and upon the ground that said amended petition does not state facts sufficient to constitute a cause of action. Essentially, the facts alleged are as follows:

At the time in question, February 23, 1953, it is alleged Sister Mary George was acting under apparent authority as administrator and managing agent of St. Francis Hospital for the defendant Sisters of Charity of Leavenworth. She handled all employer-employee relationships, hired and dismissed employees, paid and settled all obligations of the hospital and appeared to have full authority thereto. At all times the plaintiff alleges to be relying upon apparent authority of the administrator.

On or about February 21, 1953, plaintiff was an employee of the hospital and, while acting in said capacity, was allegedly injured severely and permanently as a result of a fall from a ladder.

It is alleged that two days later the plaintiff, in reliance on the apparent authority of the administrator, did orally contract with the defendant that if the plaintiff would refrain from prosecuting a claim against said hospital by reason of his injury, he could continue all the duties that he was physically able to perform for as long as he would desire to work and in the same capacity as chief maintenance engineer. He could remain employed for the rest of his life at a salary comparable to that paid employees of similar institutions. The hospital, it is alleged, agreed to pay all of the plaintiff's medical expenses arising out of said injury and also agreed to continue the plaintiff's wages during such times as he might be unable to perform his duties as a result of such injury.

The plaintiff now asserts that, acting on reliance of this agreement, he has refrained from suing the defendant, has continued in the employ of the hospital according to the terms of the oral contract and is now unable to assert his claim as the statute of limitations has run. He alleges that the defendant also acted according to the terms of the agreement, making periodic adjustments in his wages, paying medical expenses of the plaintiff, and continuing to pay plaintiff his wages at times when he was unable to work due to the injury.

However, on January 12, 1960, the plaintiff alleges his employment was wrongfully terminated, breaching the contract to the injury and damage of said plaintiff.

The plaintiff asserts that he has been injured by this breach and has damages amounting to loss of earnings in the amount of $110,000.00 and prospective medical expenses in the amount of $12,000.00.

This appeal is from the ruling of the trial court sustaining a demurrer to the petition and it is incumbent on the court to draw all favorable inferences that may be drawn and to construe the petition most favorably to the pleader. When a demurrer is lodged against a petition, it is to be liberally construed in favor of the pleader, all well-pleaded allegations are to be taken as true and admitted, and pleader is entitled to all favorable inferences that may be drawn from the facts pleaded (*Dugger v. State Highway Commission*, 185 Kan. 317, 342 P. 2d 186; *In re Estate of Shirk*, 186 Kan. 311, 350 P. 2d 1; *Shirk v. Shirk*, 186 Kan. 32, 348 P. 2d 840; *Adams v. City of Arkansas City*, 188 Kan. 391, 362 P. 2d 829).

In the light of the facts aforementioned, this court has little difficulty finding the consideration for the contract, as alleged, to be sufficient, although the appellee would seem to assert the contrary.

There is no requirement that a legal obligation be pleaded and proved. The fact that the substance of a forbearance to sue need not be a legal claim is well established (*Snuffer v. Westbrook*, 134 Kan. 793, 8 P. 2d 950; *Froelich v. Froelich*, 155 Kan. 17, 21, 122 P. 2d 759; *Brent v. McDonald*, 180 Kan. 142, 152, 300 P. 2d 396).

Forbearance to sue can be good consideration for a promise, regardless of the actual validity of the claim, if the one who forbears has a reasonable and sincere belief in its validity.

"The view is taken that a reasonable and sincere belief in the validity of the claim is necessary and sufficient. It is sometimes stated that if an intending litigant bona fide forbears a right to litigate, he gives up something of value. The reality of the claim which is given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concession." (12 Am. Jur. p. 581, sec. 87.)

Construing the petition most favorably for the plaintiff, it can be said that some sincere right was forborne and that in reliance of such, the defendants acted accordingly.

We now come to the question of the apparent authority of the administrator of the hospital. Although we would agree that the

contract made by the plaintiff with the hospital and the Sisters is probably unusual and one which the administrator might not be thought to have apparent authority to make in the first instance (*Townsend v. Railway Co.*, 88 Kan. 260, 128 Pac. 389), that is not the whole story. In paragraphs V and VI of the petition it is alleged that the Sisters and the hospital carried out the contract for seven years as did the plaintiff. Certainly when plaintiff was off work as he alleges he was and when the hospital paid for his medical care at times, it would come to the attention of the managers of the corporation that plaintiff had a special contract. Thus, it must be thought that the Sisters have acquiesced in the making the contract by Sister Mary George and have ratified it.

This theory, of course, smacks of estoppel and the defendant immediately argues that the plaintiff has not pleaded estoppel. Plaintiff has not used the word "estoppel" in the petition, but paragraphs V and VI contain all the facts amounting to a claim of estoppel. It is even alleged that plaintiff has changed his position to his detriment in reliance on the existence of the contract.

This pleading of a change of position is not generally necessary where the doctrine of estoppel is asserted because the defendant has acquiesced to a proposition. In the case of *Bank v. Jesch,* 99 Kan. 797, 163 Pac. 150, where the plaintiff bank claimed a mortgage upon the share of wheat of a former tenant of land on the basis that defendant had acquiesced in the fact that the tenant had such an interest in the wheat. The court said:

"The plaintiff contends that by his conduct at this time the defendant was precluded from afterwards denying its claim. The defendant maintains that no estoppel could have resulted, because the plaintiff's position was in no way changed for the worse by reason of anything that had been said. . . . 'Whether the principle is described as equitable estoppel, *quasi*-estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important.' (*Powers v. Scharling*, 76 Kan. 855, 859, 92 Pac. 1099.) 'The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced.' (10 R. C. L. 694.) The courts properly look with favor upon a claim to a crop reasonably made by or under him who planted it. 'If possible, the law allows the one who sows to reap.' (*Smith v. Frantz*, 59 Ind. App. 260, 270.) Here the defendant not only acquiesced in the bank's assertion of an interest in the wheat, but also exacted an enforceable promise that it would pay the expenses. Upon this ground we sustain the decision of the trial court." (pp. 799, 800.)

Attention may also be drawn to 19 Am. Jur., *Estoppel,* Sec. 62, page 678 where it is said:

"... Estoppel by acquiescence is, obviously, closely related on the one hand to estoppel by consent and, on the other hand, to estoppel by silence or inaction, or by delay. In fact it is often impossible to distinguish clearly between such estoppels, and the courts in many instances use the term 'acquiescence' as covering or including all the others. 'Acquiescence,' as the term is here used, however, refers to an implied consent and need not involve anything in the nature of a positive affirmation; and while, as has already been pointed out, silence or inaction may, under some circumstances, amount to acquiescence, it does so only where the circumstances are such as to afford some ground for believing that acquiescence was intended. The rule is well recognized that where a party with full knowledge, or with sufficient notice or means of knowledge, of his rights and of all the material facts remains inactive for a considerable time or abstains from impeaching a contract or transaction, or freely does what amounts to a recognition thereof as existing, or acts in a manner inconsistent with its repudiation and so as to affect or interfere with the relation and situation of the parties, so that the other party is induced to suppose that it is recognized, this amounts to acquiescence and the transaction, although originally impeachable, becomes unimpeachable."

See further *Stark v. Meriwether*, 99 Kan. 650, 657, 163 Pac. 152; *Lillard v. Johnson County*, 102 Kan. 822, 172 Pac. 518; *Wilson v. Stephenson*, 143 Kan. 91, 53 P. 2d 874; *Rogers v. Dumas*, 166 Kan. 519, 203 P. 2d 165.

Even if it is admitted that the contract sued upon be classed as unusual, still there is enough in the amended petition to indicate that the managers of the corporation acquiesced in the contract. That is sufficient on a demurrer.

In the brief defendant lays great stress on the section of the statute now appearing as G. S. 1961 Supp. 17-1725. This section was passed as Laws of 1959, ch. 127, Sec. 1. The section provided that corporations such as plaintiff who own and operate hospitals shall have certain benefits. It provides:

"... and such property, income or proceeds shall not be subject to attachment, garnishment, execution, or other forced disposition or process *except* . . . *for obligations contractually assumed by such corporation* for the purpose of rendering its services, and performing its functions, for such beneficiaries." (Emphasis supplied.)

Defendant makes the claim that the legislature has exempted defendant from the rule of *Noel v. Menninger Foundation*, 175 Kan. 751, 267 P. 2d 934; however, we do not need to pass upon that question at the present time.

Plaintiff's cause of action is one sounding in contract—a contract which engaged an employee for the hospital. On its face the contract would not appear to be made in contravention of the statute.

It is of course true that the contract involved in the case at bar did involve the settlement of a tort claim, but certainly the statute would not be urged as making such a contract void if defendant honestly entered into it.

Further plaintiff has alleged that the pertinent contract was in existence for six years prior to the time of the passage of the statute. Certainly, the legislature had no constitutional power to abrogate a binding six year old contract by simply passing a statute. (*Douglass v. Loftus,* Adm'x, 85 Kan. 720, 119 Pac. 74.)

Defendant has included a cross appeal attached as a counter abstract to its brief. Defendant complains that the trial court did not sustain parts of the motion to make definite and certain leveled at the plaintiff's petition. We do not believe that the cross appeal is well taken. Most of the material asked for in the motion and now urged on appeal is defensive matter which can be pleaded in defendant's answer and concerning which there would seem no duty on plaintiff's behalf to plead in the petition.

Moreover, motions to make definite lie so much in the discretion of the trial judge that this court rarely considers them on appeal. We are confident that the petition was not so indefinite as to be uncertain of the charge (G. S. 1949, 60-741; *Marshall v. Duncan,* 182 Kan. 540, 322, P. 2d 762).

We believe that the plaintiff's petition does state a cause of action for breach of contract, and that the learned trial judge erred in sustaining the demurrer. Whether plaintiff will be able to prove his case is another question, but we believe he should have a chance to try to do so.

The judgment and orders appealed from should be reversed. The cross appeal is affirmed. It is hereby so ordered.

PARKER, C. J., and PRICE, J., dissent.