409 P.2d 583

**John KECK and Mary Keck, husband and wife, Appellants,**

**v.**

**J. N. BROOKFIELD and Ruth Brookfield, husband and wife, Buster Jenkins and Dorothy Jenkins, husband and wife, Buster Jenkins and Grace Jenkins, husband and wife, and Grace Jenkins, a single woman, Appellees.\***

No. 2 CA–CIV 5.

Court of Appeals of Arizona.

Dec. 30, 1965.

Rehearing Denied Jan. 31, 1966.

Review Denied March 1, 1966.

\* This appeal was filed with the Arizona Supreme Court and assigned that Court's No. 7266. The matter was referred to this Court pursuant to § 12–120.23 A.R.S.

Robert D. Stauffer, Tucson, for appellants.

Dunseath, Stubbs & Burch by Dean Burch, Tucson, for appellees.

HATHAWAY, Judge.

John Keck and Mary Keck, husband and wife, filed suit in superior court, Pima county, seeking to recover possession of certain real property owned by them. The case was tried to the court sitting without a jury and the Kecks appeal from the portion of the judgment entered therein which decreed that the plaintiffs' interest in the property was subject to a contract to make a lease entered into between defendants as lessees and prior owners as lessors. The following facts are disclosed in the record:

In 1948 or early 1949, J. N. Brookfield and Ruth Brookfield, husband and wife, and Buster Jenkins and Dorothy Jenkins, husband and wife, went into possession of a barn under a lease agreement with the owners of a parcel of property on which the barn was located, Mr. and Mrs. Charles Stegmeier. Mr. Brookfield and Mr. Jenkins formed a partnership and established a mattress factory in the barn. Ownership of the property changed several times since the defendants started their mattress factory, but they continued to operate "Brookfield's Tucson Mattress Company" on the premises, and paid rent to the various owners. In 1952, the Stegmeiers conveyed the entire property to Mr. and Mrs. Dorris.

On June 1, 1953, J. N. Brookfield and Ruth Brookfield, husband and wife, and Buster Jenkins and Dorothy Jenkins, husband and wife, as lessees, executed a lease agreement with Mr. and Mrs. Dorris, as lessors. The lease was for a one-year period ending on June 1, 1954. It provided that the $1,500 rent be paid in monthly installments of $125 and granted to the lessees an option to renew the lease on the same terms for an additional twenty-year period upon the giving of proper notice. The leased premises were described as "* * * that certain barn located at 2552 Oracle Road, Pima County, Arizona."

On February 26, 1954, J. N. Brookfield, Buster Jenkins, and the Dorrises, in each other's presence, signed their names in the right hand margin of the lease dated June 1, 1953, for the purpose of giving effect to the following written addition to the instrument made at that time by J. N. Brookfield:

"February 26, 1954, it is agreed by all signatures attached that this lease shall run for the 20 year period stated above and that the lessees can revoke said lease at the end of any given year by giving a 30 day written notice."

Subsequent to the signing, but on the same occasion and in the presence of all of the signatories, Brookfield interlineated after the word "above" the words "minus renewal claus [sic]." Brookfield crossed out of the habendum clause of the lease the figure "1954" and inserted in its place the figure "1973." The alteration was initially made in pencil prior to the signing and then was redone in ink after the signatures were affixed, while everyone was present.

Buster and Dorothy Jenkins were divorced in September, 1953. The divorce decree approved a separation agreement between the parties which provided that upon payment of a stipulated sum by Buster, the community interest in the mattress company was to become his sole and separate property.

Some time later, Brookfield altered the lease agreement by deleting Dorothy Jenkins' name as a lessee and substituting Grace Jenkins' name and by crossing out Dorothy's signature which had been affixed thereto in 1953. At the time of the alteration, Buster Jenkins had remarried, Grace being his second wife. Grace, however, never signed the lease.

On May 1, 1958, the Dorrises sold the property to Perry and Alvene F. Kinchloe who in turn sold the property to the plaintiffs on January 1, 1959. At the time of the sale, neither the original 1953 lease nor the altered version had been acknowledged or placed of record, but the defendants were in exclusive possession of the "barn" and an adjoining area of approximately 2,165 square feet enclosed by a cyclone fence. In addition, the defendants were using a portion of the lessors' property to the north and south of the enclosed area for purposes of ingress and egress to the enclosure. The cyclone fence contained two gates, one at the north side and the other at the south side.

After purchasing the property, the plaintiffs fenced off an area immediately to the north and east of the mattress factory, thereby blocking the defendants' access to the north side of the cyclone fence, and placed a house trailer in this area. They instructed the defendants not to use the south gate which instruction the defendants obeyed.

At the beginning of February, 1959, the plaintiffs notified the defendants that effective March 1, 1959, the month to month lease of the defendants would terminate. The defendants were offered a new month to month tenancy at a rental of $175 per month, provided that the offer was accepted prior to February 18, 1959. The defendants did not accept but continued to send to the plaintiffs checks in the amount of $125 per month which the plaintiffs did not cash but retained in their possession.

Appellants have set forth numerous assignments of error in their briefs but we find no authority cited in support of most of the propositions advanced. Therefore we shall confine our review of the judgment rendered below to a consideration of the fundamental issue: Were appellees entitled to possession of the subject premises as found by the trial court?

Appellants take the position that the 1954 agreement between the Dorrises as lessors and Brookfield and Jenkins as lessees was not a valid lease, binding upon appellants, since it was neither acknowledged nor recorded. A.R.S. § 33–412 provides:

"A. All bargains, sales and other conveyances whatever of lands, tenements and hereditaments, whether made for passing an estate of freehold or inheritance or an estate for a term of years, and deeds of settlement upon marriage, whether of land, money or other personal property, and deeds of trust and mortgages of whatever kind, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by

law, or where record is not required, deposited and filed with the recorder. "B. Such unrecorded instruments, as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or without valuable consideration, shall be valid and binding."

While the 1954 lease was not a legal conveyance of a leasehold interest, it was an enforceable contract for a lease between the parties thereto, and under the principle that equity regards that as done which ought to be done, a landlord-tenant relationship was created between them. Murphey v. Brown, 12 Ariz. 268, 277, 100 P. 801 (1909); A.R.S. § 33-437.

Appellants argue that the lease in question was void for lack of mutuality of obligation since the appellees had a right to terminate the lease upon 30 days notice. We do not agree. Mutuality is absent when only one of the contracting parties is bound to perform. Where there are mutual promises between the parties, as there are here, it is not necessary to render a particular promise by one party binding that there be a special promise on the part of the other party directed to that particular obligation. Taylor v. Kingman Feldspar Co., 41 Ariz. 376, 381, 18 P.2d 649 (1933). There being sufficient consideration, the validity of the lease is not affected by the fact that the lessees had an option to terminate while the lessors had no correlative right.

The demised premises were described in the lease as "that certain barn located at 2552 Oracle Road, Pima County, Arizona." Appellants contend that the trial court erred in admitting parol evidence for the purpose of ascertaining the extent of the property covered by the written lease. We find no error on the part of the lower court. If a lease contains an ambiguous or uncertain provision, in order to ascertain its meaning, the court may look to the interpretation that the parties, in the performance of the lease, have placed on such provision. 32 Am.Jur., Landlord and Tenant § 127. The term "that certain barn" is one which requires resort to extrinsic evidence to aid in construing its meaning. Such extrinsic evidence was not introduced to vary or alter the terms of the contract in violation of the parol evidence rule but rather to ascertain the intention of the parties as to the extent of the property demised. Therefore it was proper for the trial court to receive evidence showing what property was intended to be covered by the description "that certain barn" and also the actual conduct of the parties in construing this description. See Guttman v. Berry, 83 Cal.App.2d 507, 189 P.2d 41, 43 (1948); 32 Am.Jur., Landlord and Tenant § 165.

Having determined that the 1954 document was an enforceable contract for a lease between Jenkins and Brookfield as lessees and the Dorrises as lessors, the sole remaining question is whether it is binding upon the appellants as subsequent purchasers. A.R.S. § 33-412, subsec. B as hereinabove set forth provides that unrecorded instruments conveying an estate for a term of years is binding upon subsequent purchasers with notice thereof. The trial court held, and we believe properly, that appellants were purchasers *with notice* and therefore bound by the equitable lease. It is undisputed that the appellees were in open, notorious and exclusive possession of the subject premises. The appellants, however, according to Mr. Keck's testimony at the trial never made inquiry of the appellees as to the extent of their possessory interest. Mr. Keck, when examined by appellees' counsel, testified:

"Q. Did you ever go on the premises when you bought the property or before you bought the property?

A. I did.

Q. You inspected the premises?

A. I have.

Q. Did you ever notice the sign 'Brookfield's Tucson Mattress Factory' on the large barn?

A. I did.

Q. You weren't curious as to by what right they were in that barn, Mr. Brookfield and Mr. Jenkins?

A. By what right?

Q. Yes.

A. No.

Q. You knew that was part of the property that you were purchasing?

A. Yes."

■ Mr. Keck further testified that his predecessor in interest told him that there was a lease which was to end January 1, 1959, and that he felt it unnecessary to inquire further as to the tenants' right of possession. We are of the opinion that the appellants were derelict in their duty. A purchaser of land in possession of one other than the holder of the record title is compelled to inquire of the possessor by what title he holds possession, or he will be held to have taken subject to whatever rights a proper inquiry would disclose that the possessor had. Roy & Titcomb, Inc. v. Villa, 37 Ariz. 574, 577, 296 P. 260 (1931).

In Frame v. Frame, 32 W.Va. 463, 9 S.E. 901, 907, 5 L.R.A. 323 (1889), the court said: "The earth has been described as that universal manuscript, open to the eyes of all. When, therefore, a man proposes to buy or deal with realty, his first duty is to read this public manuscript; that is, to look and see who is there upon it and what are his rights there." The law does not permit a person to close his eyes to facts that he cannot otherwise fail to see for the purpose of remaining in ignorance of them and thus acquire an unjust advantage. See Rogers v. Dumas, 166 Kan. 519, 203 P.2d 165, 169 (1949).

■ Appellants claim that they had no duty to inquire since there appeared of record an assignment of rents and profits executed by the Stegmeiers which referred to a lease between the Stegmeiers and the Brookfields and Jenkins dated December 1, 1951. This recorded assignment, however, does not relieve appellants of the duty to ascertain appellees' interest. Even if the terms of the 1951· lease were described in the recorded assignment, which they were not, the rule that, where one is in possession under a known right of possession, such possession is referable to such right and a purchaser is not required to inquire further, is inapplicable to lessees who rent for short periods of time and often renew their leases. See Golden v. Bilbo, 192 Iowa 319, 184 N.W. 643, 645 (1921).

Appellants knew that the appellees were in open and actual possession of the subject premises and knew of prior lease arrangements. Under these facts ordinary business prudence should have prompted them to pursue such reasonable inquiry as would have disclosed the terms and conditions of the tenancy. Therefore they must be charged with full knowledge of the terms of the lease and the appellees' rights thereunder.

Judgment affirmed.

KRUCKER, C. J., and RICHARD N. ROYLSTON, Superior Court Judge, concurring.

NOTE: The Honorable John F. Molloy having requested that he be relieved from consideration of this matter, The Honorable Richard N. Roylston, Judge of the Superior Court, Pima County, was called to sit in his stead and participate in the determination of this decision.