No. 46,029

GILL MORTUARY (MILLIE E. GILL, *Appellant*, v. SUTORIS, INC., and PAUL E. SUTORIS, *Appellees.*

(485 P. 2d 1377)

Opinion filed June 12, 1971.

*Orlin L. Wagner,* of Wichita, argued the cause, and *Michael D. Wilson,* of Wichita, was with him on the brief for the appellant.

*Richard T. Foster,* of McDonald, Tinker, Skaer, Quinn and Herrington, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: The action in district court was one to compel specific performance of two leases of billboard space on each side of a business building or, in the alternative, for damages for failure to perform.

Trial was to the court. At the conclusion of plaintiff's evidence the court sustained defendants' motion for involuntary dismissal. Plaintiff appeals from that order.

The matters at issue can best be understood by reciting the findings made by the trial court:

"2. 'Gill Mortuary', the name by which the plaintiff is designated in this

action, is the business name employed by Millie E. Gill in the operation of a mortuary located at 243 North Emporia Avenue, Wichita, Kansas. Hugh W. Gill, Jr. is employed as the manager of said mortuary, and is the agent for its owner.

"3. Clinton A. Park was president of R. W. Park & Sons, Inc., a corporation, which for many years owned and operated an establishment for the sale of grave stones and monuments in a store building located at 1707 East Douglas Avenue, owned by said R. W. Park & Sons, Inc. and legally described as follows, to-wit: [description].

"4. Prior to 1962, R. W. Park & Sons, Inc. leased space atop said building to the Coca Cola Bottling Company for its billboards. On December 21, 1962, R. W. Park & Sons, Inc. entered into two lease agreements with Hugh Gill, Jr., in the name of Gill Mortuary, as lessee.

"5. Under one of said leases (Plaintiff's Exhibit # 2), Gill Mortuary was granted the right and permission to occupy space described in said lease as the 'West side of roof at 1707 East Douglas' for a term of sixty (60) months, unless sooner terminated as provided in said lease, commencing on January 1, 1963. Under the other said lease (Plaintiff's Exhibit # 3), Gill Mortuary was granted the right and permission to occupy space described in said lease as the 'East side of roof at 1707 East Douglas' for a term of sixty (60) months unless sooner terminated as provided in said lease, commencing on February 3, 1963.

"6. Although not expressly stated in said leases, the Court finds that it was the intent of the parties thereto for Gill Mortuary to be granted the right and permission to erect 'electrical displays', *i. e.* illuminated billboards, on the west and east sides of the roof of said buildings where there had been Coca Cola signs previously, for a monthly rental stipulated in said leases. Large, illuminated billboards advertising the Gill Montuary were erected under said leases, on the east and west sides of the roof of said building at 1707 East Douglas Avenue in Wichita, Kansas.

"7. In each of said leases, Gill Mortuary was granted an option to renew the agreement for a period of sixty (60) months, provided 'said option to be exercised in writing at least ninety (90) days prior to expiration of this lease'.

"8. It was further provided in each lease that in the event R. W. Park & Sons, Inc. might sell, lease or rent the property at 1707 East Douglas, after the lease, or extension thereof, had been in effect thirty-six (36) months, said lessor could terminate the lease by giving lessee ninety (90) days notice. The Court finds that it was the intent of the parties to said leases that the same could be terminated at any time after said leases had been in effect for thirty-six (36) months, in the event the property was sold, leased or rented, whether or not the leases were still within the basic sixty-month term or had been extended.

"9. On or about June 22, 1966, R. W. Park & Sons, Inc. listed the property for sale with Bill Earnest, a realtor associated with the B. J. Watkins Realty Company. This realtor negotiated with Sutoris, Inc., defendant herein, for the purchase of the property owned by R. W. Park & Sons, Inc. At about the same time, Sutoris, Inc. completed the purchase of all the separate properties on the

south side of the 1700 block of East Douglas, adjoining the R. W. Park & Sons, Inc. property on both sides.

"10. Said Bill Earnest informed Paul E. Sutoris, president of Sutoris, Inc., of the provisions for termination contained in said leases.

"11. On December 6, 1966, Clinton A. Park, on behalf of R. W. Park & Sons, Inc., and Paul E. Sutoris, on behalf of Sutoris, Inc., executed a real estate contract (Plaintiff's Exhibit # 1), which included, among other things, a provision that the buyer would honor 'an existing lease on a sign which has approximately two (2) years duration left; all income from said sign to go to the sellers who agree to remove and relocate said sign, at seller's expense, so as not to deter or distract from the buyer's proposed use of the property.'

"12. Clinton A. Park promptly informed Hugh Gill, Jr., of the sale of the premises, and Hugh Gill, Jr., agreed to have the signs removed. Hugh Gill had knowledge that the building would be demolished by Sutoris, Inc.

"13. Thereafter, Clinton A. Park, on behalf of R. W. Park & Sons, Inc., executed a General Warranty Deed, dated March 16, 1967, conveying the property to Sutoris, Inc., without reservation or exception. The deed was recorded the same date.

"14. Following delivery of the deed to said property to Sutoris, Inc., and more than ninety days after notice was given to him by Clinton A. Park of the sale of said property, Hugh Gill had the billboards removed, at the expense of Gill Mortuary. Rental for the space occupied by said signs was paid each month until said billboards were removed, and Gill Mortuary was not in default in the payment of the rent under said leases at the time the billboards were removed.

"15. Thereafter, the building at 1707 East Douglas and the other buildings on the south side of the 1700 block on Douglas Avenue were demolished and the entire tract of land cleared. Sutoris, Inc., then commenced construction of a large, substantial and attractive brick building of special design and decor for the purpose of operating a car wash enterprise. Said building, completed at the time of this trial, occupies most of the south side of the 1700 block on East Douglas Avenue, without distinction as to previous boundaries. The present use of the land, and the improvements constructed thereon, are wholly and distinctly different from the prior uses and structures thereon, and are not identifiable therewith.

"16. From the evidence, the Court finds that no person informed Sutoris, Inc., or its officers, employees or agents, of any intention by the plaintiff to re-establish the Gill Mortuary billboards on the premises purchased by Sutoris, Inc., from R. W. Park & Sons, Inc., or claimed any continuing leasehold estate in the premises, until February 8, 1968, at which time the building constructed by Sutoris, Inc., was substantially completed.

"17. From the evidence, the Court finds there was no mutual understanding or agreement, written or oral, between or among any of the parties involved, for any modification or suspension of the terms of the Gill Mortuary leases, so as to have extended said leases or prevented their expiration on December 31, 1967 and February 2, 1968, respectively, by their own terms.

"18. On February 8, 1968, and more than sixty months from the commencement of said leases, Hugh Gill, Jr. advised Sutoris, Inc. that Gill Mor-

tuary was electing to exercise the option to extend the leases, and that Gill Mortuary's sign company had been instructed to proceed with erection of said signs. (Plaintiff's Exhibit # 4.)

"19. On February 19, 1968, Sutoris, Inc., through its attorney, notified Hugh Gill, Jr. that if it was assumed the leases had not theretofore expired or been terminated, it was giving notice of termination of said leases at that time."

Recapitulating the more significant events chronologically, the five year term leases between appellant Millie E. Gill and the initial lessor or building owner by their terms became effective January 1, 1963, and February 3, 1963; the lessor entered into a contract of sale for the building with appellees on December 6, 1966, and conveyed title to the building to the latter by warranty deed March 16, 1967; appellant removed her signs from the building either in March or April, 1967, and appellees thereafter constructed the carwash enterprise on the entire block in question; on February 8, 1968, appellant exercised its claimed option to renew the leases, and on February 19, 1968, appellees declared the leases terminated.

Based on its findings the trial court made the following conclusions:

"1. Paul E. Sutoris, defendant herein, is not the owner of any property involved in this lawsuit, and any act on his part was done in his capacity as president of Sutoris, Inc., defendant corporation, and not by him individually. Wherefore, the Court concludes that said Paul E. Sutoris is not a proper party defendant in this action.

"2. The right and permission to Gill Mortuary to occupy space on the roof of the building formerly located at 1707 East Douglas, terminated when Hugh Gill removed the plaintiff's billboards after notice of sale of the premises, at the expense of Gill Mortuary and in compliance with said lessee's obligations under said lease in the event of termination, when said Hugh Gill knew the building was to be demolished, without making known to any party to the transaction any intent, claim or belief that he did not agree to, or acquiesce in the termination of said leases and the destruction of said leasehold estates.

"3. In addition to the foregoing, said leases expired by their own terms on December 31, 1967 and February 2, 1968, respectively, and any purported attempt by the plaintiff to extend said leases beyond those dates was ineffective.

"4. In addition to the foregoing, if said leases were not terminated and did not otherwise expire, as stated herein, the said leases were terminated by Sutoris, Inc. on February 19, 1968.

"5. The plaintiff's evidence is insufficient to establish any right, in equity, to compel the defendants Sutoris, Inc. or Paul E. Sutoris to specifically perform said lease agreements.

"6. Said leases, relied upon by the plaintiff, are impossible of performance.

"7. The plaintiff is not entitled to damages or specific performance, on account of the plaintiff's laches, acquiescence, waiver, estoppel and unexcusable delay in presenting any right or claim of a leasehold on the premises which Sutoris, Inc. purchased from R. W. Park & Sons, Inc. free and clear of all encumbrances.

"8. The plaintiff has not established the amount of any ascertainable damages as a result of the removal of the billboards in controversy; and the amount of loss or damage, if any, sustained by the plaintiff is wholly speculative and incapable of measurement by this Court, based upon the plaintiff's evidence."

The court thereupon entered judgment against appellant.

In urging reversal appellant treats the trial court's action as though it amounted to entry of summary judgment rather than an order sustaining a motion for involuntary dismissal. She argues the court erroneously failed to construe the evidence strictly against appellees and liberally in favor of appellant. No such rule prevails where trial is to the court. In the oft-cited case of *Mackey-Woodard, Inc. v. Citizens State Bank,* 197 Kan. 536, 419 P. 2d 847, we held:

"Where the defendant in an action tried to the court without a jury moves for involuntary dismissal of the action at the close of the plaintiff's case pursuant to the provisions of K. S. A. 60-241 (*b*), based on the ground that upon the facts and the law the plaintiff has shown no right to relief, the trial judge has the power to weigh and evaluate the evidence in the same manner as if he were adjudicating the case on the merits and making findings of fact at the conclusion of the entire case, overruling *Pennsylvania National Mutual Cas. Co. v. Dennis,* 195 Kan. 594, 408 P. 2d 575." (Syl. ¶ 7.)

Actually appellant does not in any of her contentions question the existence of substantial evidence in the record to support the trial court's findings. Hence if those findings justify any of the several conclusions of law adverse to appellant, and the judgment rendered thereon, appellant cannot prevail.

Among other matters, the trial court concluded the two leases had by their own terms expired prior to any attempt by appellant to exercise the renewal option and therefore the attempt was ineffective (Concl. No. 3).

Each lease contained a provision it could be renewed for an additional period of five years at the option of the lessee, such option to be exercised in writing at least ninety days prior to the expiration of the lease. Appellant argues she did in fact timely exercise the option to renew. She bases this argument on her contention the leases were suspended for a period of time while the old building was being razed and the new structure was being built, and that the leases did not expire until July 1, 1969. Upon

what legal premise the leases remained viable until that date is not made clear. Appellant has conceded throughout that the terms of the leases are clear and unambiguous. In finding No. 17 the trial court specifically found there was no mutual understanding or agreement, written or oral, between the parties for any modification or suspension of the terms of the leases so as to have extended them or prevented their expiration on December 31, 1967, and February 2, 1968. Mutuality is required in order to amend the terms of a contract and one party cannot unilaterally change its terms (*Guy Pine, Inc. v. Chrysler Motors Corp.*, 201 Kan. 371, 376, 440 P. 2d 595; *Fast v. Kahan*, 206 Kan. 682, 481 P. 2d 958). Hence the purported exercise of the options to renew made on February 8, 1968, came too late.

Appellant complains the trial court actually made an oral finding from the bench at the conclusion of her evidence to the effect the leases were still in their base period. These comments were made in connection with the court's discussion of the February 19, 1968, termination by appellees to indicate that in any event following a sale of the building after the leases had been in operation for a period of thirty-six months (which situation existed) the appellees could rightfully terminate. Beyond this, however, where inconsistency exists, express written findings of fact formally made and entered as the judgment of the court must prevail over informal oral remarks previously made from the bench (see cases cited in 2B Barron and Holtzoff, Federal Practice and Procedure, rules ed., 1970 Pocket Part, § 1128, note 93, p. 199).

Appellant stresses the fact that appellees in their contract for the purchase of the building acknowledged the existence of and agreed to honor the signboard leases. This fact, however, does not advance appellant's cause inasmuch as appellees have done nothing in violation of the leases. Even their final termination of the leases, assuming they were still in effect, was specifically authorized by a clause in the leases and would be operative despite any extension or renewal clause in them (see *Batchelor's Building Maintenance Service, Inc. v. Douglas Avenue Corp. Inc.*, 205 Kan. 149, 468 P. 2d 189, in which a termination by notice clause in a contract for janitorial service for a building was held to take precedence over a clause providing that one year's contract rights would be guaranteed in event the building owner sold the building).

Appellant's argument essentially is that appellees cannot avoid

their contractual duty simply because they do not wish to have the billboard displays re-erected, which, as indicated, disregards plain provisions in the leases as to termination dates and the right to cancel upon sale after thirty-six months' operation.

We have considered other matters raised by appellant, including the exclusion of an exhibit offered by her to show removal and relocation costs of the signs, but find nothing to warrant disturbing the judgment and it is affirmed.

APPROVED BY THE COURT.