No. 58,315

TIMOTHY S. FRETS, *Appellant*, v. CAPITOL FEDERAL SAVINGS & LOAN ASSOCIATION, *Appellee*.

(712 P.2d 1270)

Opinion filed January 17, 1986.

*Timothy S. Frets,* of Kansas City, Missouri, argued the cause pro se and was on the brief for appellant.

*John Anderson, III,* of Anderson Law Offices, of Overland Park, argued the cause, and *Brian C. McCormally,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is an action for breach of contract, violation of federal regulations and the usury statute. It arises from the following facts:

On September 27, 1978, Capitol Federal Savings & Loan Association (Capitol Federal) made a loan to Keith and Irene Botts in the amount of $53,100. In consideration for the loan, the Bottses executed and delivered to Capitol Federal a first mortgage note with interest at the rate of 9.75% per annum. To secure the note, the Bottses executed a mortgage to Capitol Federal on

certain real property located at 6521 Granada Drive, Prairie Village, Kansas.

The note and mortgage contained a standard "due-on-sale clause" which is set forth later in this opinion.

On November 30, 1980, Timothy S. Frets contracted with Keith Botts for the purchase of the Bottses' home. At that time Frets specifically reserved the right to obtain other forms of financing. The purpose of the reservation of the option was primarily to allow Frets an opportunity to examine the loan documents pertaining to the due-on-sale clause prior to assuming the loan.

Based upon his understanding of the acceleration clause in the agreement, Frets prepared a supplemental agreement dated December 31, 1980, reserving the right to assume the existing mortgage.

On January 22, 1981, Mr. Frets contracted to sell his Oklahoma City home, the closing of which was scheduled for February 9, 1981. The following day, he gave two weeks' notice of resignation to his employer.

On February 6, 1981, Mr. Dennis Rabbitt, the vice-president of Capitol Federal, was contacted regarding Mr. Botts' desire to let the buyers of his home (Timothy and Lou Ann Frets) assume the existing note and mortgage. Mr. Rabbitt then forwarded an assumption packet to the real estate agency, J. C. Nichols Company. The packet contained an assumption statement, Note Endorsement, Regulation Z Disclosure statement, Notice of Right of Rescission form and instructions relating thereto. As partial consideration for Capitol Federal's agreement to waive its right to enforce the due-on-sale clause, Capitol Federal required a note endorsement by Botts increasing the rate of interest on the loan from 9.75% to 12% per annum.

Keith Botts agreed to the interest increase on February 10, 1981, prior to closing the sale transaction with appellant. On that same date, the sale transaction between Keith Botts and Frets was completed.

At the time the loan was assumed by Frets at the rate of 12% per annum, the prevailing market interest rate for new loans of the same or similar type was at or above 14.25% per annum.

The Fretses have made monthly mortgage payments to Capitol Federal since March 10, 1981.

On March 3, 1983, more than two years after the assumption of the note and mortgage, Timothy Frets commenced the present action. He initially filed a three-count petition, alleging that Capitol Federal's manner of assumption resulted in a usurious rate of interest and that the due-on-sale clause and note endorsement were invalid and unenforceable. On June 23, 1983, he amended his petition to include a breach of contract claim and request for declaratory judgment.

The trial court granted summary judgment in favor of Capitol Federal. Frets appeals.

Appellant's first contention is that the trial court erred in holding Capitol Federal was authorized to utilize the due-on-sale clause to accelerate the note for any reason it deemed sufficient. Appellant argues the exercise of a due-on-sale clause is governed by the terms of the loan contract, which limited the exercise of the clause to impairment of security only.

Capitol Federal, however, argues it had the right to accelerate the indebtedness upon a sale of the property for "any reason it deemed sufficient," including the desire to keep its loan portfolio at more nearly current rates of interest and thus protect its economic position in the marketplace as its interest costs rise with the market.

Before discussing these arguments, it should be noted Capitol Federal did not exercise the due-on-sale clause of its agreement with Mr. Botts. Instead, Capitol Federal waived its right to exercise the clause in exchange for an increase in the interest rate on the loan from 9.75% to 12%. Thus, appellant argues there was no consideration for the increased interest rate, since Capitol Federal allegedly had no right to accelerate the note absent an impairment of security.

In *Capitol Fed'l Savings & Loan Ass'n v. Glenwood Manor, Inc.*, 235 Kan. 935, 686 P.2d 853 (1984), we specifically rejected the argument that a federally chartered savings and loan institution must demonstrate an impairment of security before enforcing a due-on-sale clause in a mortgage. 235 Kan. at 942. We followed *Fidelity Federal Sav. & Loan Assn. v. De La Cuesta*, 458 U.S. 141, 73 L.Ed.2d 664, 102 S.Ct. 3014 (1982), in holding that federal law and regulations have preempted state law in this area.

The Federal Home Loan Bank Board (Board) issued the following regulation in 1976 governing due-on-sale clauses:

"[A federal savings and loan] association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as [otherwise] provided in . . . this section . . . , exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract." 12 C.F.R. § 545.8-3(f)(1983) (originally codified as 12 CFR § 545.6-11[f] [1980]).

As noted in *De La Cuesta*, the only restrictions upon enforcement of due-on-sale clauses are found in 12 CFR § 545.8-3(g) (1982) and that provision does not limit a federal association's right to accelerate a loan to cases where the lender's security is impaired. In fact, the Board approves of the practice of exercising a due-on-sale clause in order to adjust a long-term mortgage interest rate toward current market rates.

The Board's analysis was summarized in *De La Cuesta*:

"It [the Board] observes that the federal associations' practice of borrowing short and lending long—obtaining funds on a short-term basis and investing them in long-term real estate loans, which typically have a 25- to 30-year term—combined with rising interest rates, has increased the cost of funds to these institutions and reduced their income. Exercising due-on-sale clauses enables savings and loans to alleviate this problem by replacing long-term, low-yield loans with loans at the prevailing interest rates and thereby to avoid increasing interest rates across the board." 458 U.S. at 168-69.

Thus, it is clear it is acceptable for a savings and loan association to enforce the due-on-sale clause for the purpose of improving its position in the money market.

Appellant does not disagree with this contention, but instead emphasizes the second sentence of the regulation quoted above, which provides in pertinent part:

"[E]xercise by the association of such option (hereafter called a due-on-sale clause) *shall be exclusively governed by the terms of the loan contract,* and all rights and remedies of the association and borrower shall be fixed and governed by that contract." (Emphasis added.) 12 C.F.R. § 545.8-3(f) (1983).

Appellant argues the emphasized portion of the regulation mandates each loan contract be considered on a case-by-case basis. Thus, depending upon the terms of the contract, the federal association *may* be limited to enforcing the due-on-sale

clause to cases where transfer of the mortgaged property constitutes an impairment of security.

The United States Supreme Court interpreted the second sentence of the regulation in *De La Cuesta* as follows:

"Moreover, in our view, the second sentence of § 545.8-3(f) simply makes clear that the regulation does not empower federal savings and loans to accelerate a loan upon transfer of the security property unless the parties to the particular loan instrument, as a matter of contract, have given the lender that right. Similarly, if the parties to a given contract agree somehow to limit the association's right to exercise a due-on-sale provision, the second sentence of § 545.8-3(f) precludes the lender from relying on the first sentence as authorizing more expansive use of the clause." 458 U.S. at 157-58.

Here, appellant argues the parties to the contract limited Capitol Federal's right to exercise the due-on-sale clause to a situation where a transfer would impair the security property.

Let us now examine the due-on-sale clause found in the mortgage given by Keith Botts and assumed by the appellant. It provides:

"The loan evidenced by said note and secured by this mortgage has been made by said Lender by reason of the personal and financial responsibility of the Borrower. The real estate mortgaged to secure said note may be sold, conveyed or otherwise alienated by the Borrower at any time subject to the lien of this mortgage, provided, however, that in such event, the Borrower agrees that said Lender may, at its option and for any reason it deems sufficient, elect to declare all remaining principal and accrued interest remaining due on said note immediately due and payable and foreclose this mortgage."

Appellant contends the first sentence of the clause indicates the intention of the parties that the due-on-sale clause be used solely to protect the security of the mortgage. Such an interpretation ignores the provision in the second sentence of the clause allowing Capitol Federal, upon transfer of the property, to accelerate the loan "for any reason it deems sufficient." This phrase clearly contemplates a lender's acceleration of payment for the purpose of portfolio maintenance. Acceleration is not limited, as appellant suggests, to cases where the assuming buyer's creditworthiness is suspect.

In light of our holding in *Glenwood Manor,* and the specific language of the contract in the instant case, the trial court properly ruled that Capitol Federal's utilization of the due-on-sale clause to achieve an increased interest rate was within the terms of the agreement.

Appellant next argues that Capitol Federal breached the terms

of the note and mortgage by entering into an agreement to increase the interest rate on the note prior to the transfer of the property and without giving the appellant sixty days' notice in writing. This argument centers on a second provision in the note pertaining to the due-on-sale clause:

"In the event the real estate mortgaged to secure this note is so transferred before this note is paid, said Lender may elect to accept the assuming grantee and waive its right to accelerate this note . . . At the time of such acceptance of the assuming grantee by Lender, said Lender may increase the interest rate up to but not to exceed the then current rate being charged by the Lender on similar new loans, upon giving sixty (60) days notice in writing."

The appellant concludes from this provision that Capitol Federal did not have the right to waive its right to exercise the due-on-sale clause or increase the interest rate until after Mr. Botts sold his house to the appellant and Capitol Federal accepted appellant as the assuming grantee. Moreover, appellant argues that before increasing the interest rate, Capitol Federal should have given him sixty days' notice in writing.

This argument disregards the fact that *prior to* the transfer of the property, Capitol Federal entered into a written modification agreement (note endorsement) with Keith Botts whereby Capitol Federal waived its right to accelerate the note in exchange for an increased interest rate. The provision in question, on the other hand, refers to the unilateral exercise by the lender of its right to an increased interest rate, *following* a transfer of the property and the acceptance of the assuming grantee. Capitol Federal did not exercise its unilateral right, but, instead, waived its contractual right to accelerate in exchange for a separate agreement with the original borrower to increase the rate of interest. If appellant has a complaint, it is against the party with whom he contracted—Keith Botts. However, it should be remembered Frets freely and voluntarily assumed the Capitol Federal loan and made payments thereon for two years prior to filing this suit. This issue is without merit.

Appellant next alleges the trial court erred in ruling Capitol Federal did not breach the terms of the mortgage by agreeing to an increase in the interest rate in excess of the rate permitted by K.S.A. 1978 Supp. 16-207.

Appellant makes several points under this issue, the first of which is that the 12% interest rate agreed to in the note en-

dorsement was in excess of the 11% usury limit in effect at the time the original agreement was made in 1978.

The Kansas usury law in effect on September 28, 1978, provided in pertinent part:

"The parties to any loan evidenced by a note secured by a first real estate mortgage may stipulate therein for interest receivable upon the amount of such note at a rate not to exceed eleven percent (11%) per annum." K.S.A. 1978 Supp. 16-207.

In support of his contention, appellant cites the general rule that the validity, construction, effect and execution of a contract are governed by the law in existence at the time the contract was made. *Schulte v. Franklin*, 6 Kan. App. 2d 651, 653, 633 P.2d 1151 (1981).

Capitol Federal argues, and the trial court agreed, that the modification agreement, represented by the note endorsement, is a new contract if supported by sufficient consideration. 17 Am. Jur. 2d, Contracts § 469.

On February 10, 1981, the date the note endorsement was executed, K.S.A. 1980 Supp. 16-207 provided the maximum interest rate was one and one-half points above the federal government's average weighted yield of mortgages accepted under the Federal Home Loan Mortgage Corporation's weekly purchase program. The 12% interest rate provided for in the note endorsement was well within the usury limitation on that date. Appellant responds to Capitol Federal's argument by contending that since Mr. Botts, the original borrower, remains liable on the loan, the note endorsement cannot constitute a new contract. This argument is without merit. The original parties to a contract may mutually modify its terms, resulting in a new contract. The validity of the new contract is governed by the law in effect on the date the modification agreement was executed. Since the 12% interest rate was within the legal limit on February 10, 1981, the date the contract was modified, it is not a usurious rate of interest.

Appellant also contends that the note endorsement cannot constitute a new contract because it is not supported by adequate consideration. Appellant bases this argument upon the fact that Capitol Federal waived a right which was not yet available to it. While it is true that Capitol Federal could not exercise the acceleration clause until the property was sold or conveyed by Mr. Botts, the relinquishment of that right in exchange for an

increased interest rate constituted adequate consideration for the agreement. As a general rule, the relinquishment of a legal or contract right or privilege is sufficient consideration for a promise. 17 Am. Jur. 2d, Contracts § 109.

Appellant reasserts his argument that the terms of the loan contract limit the exercise of the due-on-sale clause to those cases where it is necessary to protect the lender's security. Thus, appellant argues Capitol Federal's waiver of its right to exercise the due-on-sale clause could not constitute sufficient consideration since Capitol Federal had no basis for exercising the clause. As we previously determined in a different context, this issue is without merit.

Appellant's final contention under this issue is that the note endorsement was not an openly bargained-for agreement. Appellant relies primarily upon the deposition of Keith Botts as support for this proposition.

Mr. Botts testified that he understood if he didn't agree to the modification, the loan would not be assumable. Mr. Botts admitted, however, that he at no time spoke with any representative of Capitol Federal regarding appellant's assumption of the loan or his execution of the note endorsement. Mr. Botts also testified he understood his failure to sign the note endorsement wouldn't preclude him from selling his house but would preclude the assumption of the mortgage.

Keith Botts was not threatened or forced to sign the note endorsement. He voluntarily chose to execute the note endorsement and he understood the possible consequences if he didn't sign it—*e.g.*, Capitol Federal could accelerate the note in accordance with the due-on-sale clause. The facts on this issue are not controverted and the trial court properly ruled the note endorsement was an openly bargained-for agreement.

Appellant next contends Capitol Federal had no right to increase the interest rate since the due-on-sale provision was violative of public policy and, therefore, null and void.

Appellant's arguments on this issue are merely a restatement of his arguments on the previous issues. He contends the due-on-sale clause of the mortgage and note in question "contemplated and achieved an increase in excess of the 11% usury ceiling imposed by K.S.A. 1978 Supp. 16-207." Consequently, he

argues the trial court erred in failing to declare the entire note and mortgage null and void.

The fallacy of appellant's contention is that the due-on-sale clause doesn't "contemplate" any particular rate of interest. Rather, the clause operates to prohibit the borrower from assigning the mortgage to subsequent purchasers.

Secondly, as we have previously determined, the 12% interest rate is within the statutory limit in effect on February 10, 1981, the date the modification agreement was entered into.

There is no merit to appellant's contention that the due-on-sale clause was violative of public policy.

The next point argued by appellant is that Capitol Federal was guilty of substantive and procedural unconscionability in the manner in which it contracted for and exercised the due-on-sale clause.

We discussed the doctrine of unconscionability in *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 549 P.2d 903 (1976), and set forth a number of factors to be considered when determining whether a particular act or practice is unconscionable. The appellant contends that a number of these factors are present here.

Specifically, appellant notes the loan contract in this case consists of a standardized printed form drafted by Capitol Federal for mass use. He contends borrowers must accept its terms in order to obtain financing to purchase a home. This, he reasons, results in "gross inequality of bargaining power." Appellant also alleges the due-on-sale clause was inconspicuous and "buried in the middle of 13 inches of fine print." He argues the language of the due-on-sale clause was unclear and a borrower could reasonably believe the due-on-sale provision was intended only to protect Capitol Federal's security.

Appellant's contentions are without merit. The due-on-sale clause is not buried in a mass of fine print. Each paragraph in the mortgage agreement is given equal importance, emphasis and type size. The mortgage agreement is only two pages long so the fact the clause is on "the back page" is of little significance. In addition, a virtually identical due-on-sale clause is contained in the first mortgage note executed by the Bottses. The subject clause is set out in a separate paragraph.

Capitol Federal concedes it was in a much stronger lending position than both Keith Botts and the appellant. However, that

factor alone does not dictate a finding that the contract was unconscionable. *Wille v. Southwestern Bell Tel. Co.,* 219 Kan. at 759.

Finally, Keith Botts testified he read and understood the documents in question and the effect of the due-on-sale clause. Thus, if the terms of the agreement were not acceptable to Mr. Botts, he could have sought financing from another source. Furthermore, Mr. Botts signed the note endorsement with full knowledge it was a modification of the loan agreement and that he could rescind the endorsement in the event the sales transaction did not close. In *Wille,* this court commented:

"The cases seem to support the view that there must be additional factors such as deceptive bargaining conduct as well as unequal bargaining power to render the contract between the parties unconscionable. In summary, the doctrine of unconscionability is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain." 219 Kan. at 759-60.

There is no element of unfair surprise or oppression in this case. The fact that the parties had uneven bargaining power is insufficient, standing alone, for a finding of unconscionability.

Appellant makes two final points on appeal. First, he argues the trial court erred in finding the appellant could not maintain a direct action to recover usurious interest.

The trial court, relying on *Young v. Barker,* 185 Kan. 246, 342 P.2d 150 (1959), and *Marshall v. Beeler,* 104 Kan. 32, 178 Pac. 245 (1919), held that a claim of usury may only be raised as a defense or counterclaim when suit is brought to enforce payment of the alleged usurious obligation. Thus, the trial court granted summary judgment in favor of Capitol Federal on appellant's claim to recover usurious payments.

We need not consider the correctness of the trial court's ruling since this issue has been rendered moot by our determination that the 12% interest rate was within the statutory limit in effect on February 10, 1981, the date the note endorsement was executed.

Appellant also argues the trial court erred in granting summary judgment against the appellant on his claim seeking a declaratory judgment that the interest charged on his loan is usurious. The trial court ruled that a declaratory judgment action is an

inappropriate means by which to determine issues relative to usury.

In light of our previous determination that the 12% interest rate being charged on appellant's loan is not usurious, we find this issue is also moot.

The judgment of the trial court is affirmed.