CAR-X SERVICE SYSTEMS, INC. and
Mufflers of Kansas City, Inc.,
Plaintiffs-Appellees,

v.

Olivette G. KIDD-HELLER,
Defendant-Appellant.

No. 89-3219.

United States Court of Appeals,
Tenth Circuit.

March 5, 1991.

J. Nick Badgerow (Nancy M. Landis of Spencer Fane Britt & Browne, and Frank M. Lewis, with him on the brief), Overland Park, Kan., for plaintiffs-appellees.

Ronald L. Gold, Shawnee Mission, Kan., for defendant-appellant.

Before HOLLOWAY, Chief Judge, and McKAY and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

The principal issue in this appeal is whether the district court erred in granting equitable relief to a lessee who failed to timely exercise its right to renew a five-year lease of commercial property for an additional five years. Our jurisdiction is based on 28 U.S.C. § 1291. The district

court's jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. Venue was based on 28 U.S.C. § 1391(a). Some background facts are necessary to an understanding of the matter.

On September 27, 1967, Jacob G. Heller and Olivette G. Kidd–Heller, husband and wife and residents of Kansas, entered into a lease with a Mr. and Mrs. Tanquary by which the Hellers were entitled to use and possess a parcel of real estate located at 7540 Metcalf Avenue, Overland Park, Kansas. The lease was for a ten-year period with three five-year options which, if exercised, would extend the lease to September 30, 1992. On March 31, 1977, Car–X Service Systems, Inc., a Delaware corporation, entered into a lease agreement with Kidd–Heller for the subject property, which by that time contained a structure erected by Kidd–Heller suitable for use as an automotive repair business, for a five-year term with two five-year options. The initial five-year term was from May 1, 1977 through April 30, 1982. The initial rent was $1,550.00 per month which increased to $1,800.00 per month on October 1, 1977, through the end of the initial five-year term. Rent for the first additional five-year term was increased to $1,900.00 per month, and to $2,000.00 per month for the final five-year term. On April 7, 1977, Car–X entered into a sublease of the subject property with its franchisee, Mufflers of Kansas City, Inc., a Missouri corporation, whose business consists primarily in the installation of exhaust units, brakes, and shock absorbers. The sublease agreement between Mufflers and Car–X made Mufflers subject to the terms and conditions of the lease agreement between Car–X and Kidd–Heller.

The Hellers' lease with the Tanquarys provided, *inter alia*, that the tenant had the right to make such alterations, changes, and improvements to the interior of the building located on the subject premises as it deemed necessary or desirable, and that no alterations, changes, or improvements costing more than $10,000.00 would be made without the written approval of the landlord. This provision was incorporated by reference into the lease agreement between Kidd–Heller and Car–X. In addition, the lease agreement between Kidd–Heller and Car–X provided that the lessee could make such improvements to the premises as it deemed desirable but not to exceed $20,000.00 aggregate cost, and that additional improvements beyond $20,000.00 required the written approval of Kidd–Heller.

In May, 1977, Mufflers, Car–X's sublessee, built an attached storage building next to Kidd–Heller's automotive structure at a cost of $7,140.00. At the same time, Mufflers removed certain improvements belonging to Kidd–Heller, namely guttering, outside lights, and a chain link fence worth $4,700.00. Mufflers did not get Kidd–Heller's permission to make this addition or the removals. In May, 1979, Kidd–Heller learned of the changes and asked the president of Mufflers to remove the new building and restore the fence, lights, and guttering since she had never given her permission for the changes. The president of Mufflers advised Kidd–Heller that he could not restore the fence, lights, or guttering because they had been disposed of. A dispute ensued wherein Kidd–Heller threatened to file suit against Mufflers because the alterations and removals were made without her permission, as, she contended, was required by the two leases in question, i.e., the Hellers' lease with the Tanquarys and Car–X's lease with Kidd–Heller.

Mufflers and Kidd–Heller resolved this dispute in May, 1979, when Kidd–Heller agreed not to bring suit and Mufflers agreed to pay Kidd–Heller an additional $100.00 for one month, and an additional $75.00 per month for the balance of the lease. The president of Mufflers stated that he agreed to pay these additional sums to avoid a lawsuit and that it was cheaper than hiring an attorney to resist a court challenge. Kidd–Heller's position was that the extra payments were to compensate her for her loss of the improvements, i.e., guttering, lights, and a chain link fence.

The lease agreement between Kidd–Heller and Car–X required the lessee to exercise its option to renew at least six months prior to the termination of the then current

term, and that such notice be in writing and delivered personally to Kidd–Heller or sent to her by certified mail at the place where rent payments were due. As indicated, the initial five-year term was to expire on April 30, 1982. Car–X did not exercise its option to renew the lease for the first additional term until February 26, 1982. It recognized that the exercise of its option was untimely, and explained that it had "inadvertently failed" to extend the lease in timely fashion. Kidd–Heller initially refused to recognize the belated exercise by Car–X of its right to renew. Later, on April 23, 1982, Kidd–Heller and Car–X signed a new lease agreement which stated that although Car–X had failed to timely exercise its option, the lease would nevertheless be extended for a second five-year period, with the rent being raised to $2,000.00 for the first additional five-year term and $2,100.00 for the second additional five-year term.

The lease agreement required Car–X to keep in force public liability insurance and property damage insurance on the subject property. Also, Car–X was required to furnish Kidd–Heller with a certificate of insurance evidencing such insurance coverage. Apparently, during certain periods of 1985 and 1986, Car–X obtained the required insurance but did not furnish Kidd–Heller with a certificate evidencing such insurance. In any event, in April, 1986, Kidd–Heller purchased insurance for property damage for the subject property for a premium of $486.00.

In May, 1986, Kidd–Heller retained an attorney to represent her in the dispute with Car–X over insurance. On May 10, 1986, that attorney sent Car–X a registered letter advising Car–X that the lease was being terminated for failure to comply with the insurance provisions of the lease agreement. On June 3, 1986, Car–X's attorney responded to that letter, in the course of which he stated that Car–X wished "to continue [leasing the property] through the end of [the] last option term in 1992 and beyond." It is apparently agreed that Kidd–Heller was apprised by her attorney of the contents of this letter. Later, on December 8, 1986, Kidd–Heller purchased a liability insurance policy for the subject property for a premium of $1,896.00.

On February 19, 1987, Kidd–Heller gave Car–X notice by registered mail that she was terminating the lease as of April 30, 1987. On March 16, 1987, Car–X's attorney wrote Kidd–Heller's attorney again concerning the insurance dispute. In that same letter counsel for Car–X also stated that it was Car–X's position that the lease it had with Kidd–Heller was "intended to run concurrent with the underlying Ground Lease" the Hellers had with the Tanquarys, to the end that the current leasehold term would expire on September 30, 1987, not April 30, 1987. On March 19, 1987, Kidd–Heller was given notice, by registered mail, of Car–X's intent to exercise its option to renew the lease for the second additional five-year term.

In this general setting, Car–X and Mufflers filed the present proceeding in United States District Court for the District of Kansas on April 30, 1987. In Count I, Car–X sought a temporary restraining order prohibiting Kidd–Heller from terminating its lease with Car–X. In Count II, Car–X sought a declaratory judgment that Car–X had exercised its option to renew the lease in timely fashion. As indicated, in this regard Car–X alleged that it was the intent of the parties that the initial five-year lease expire on September 30, 1982, not April 30, 1982, and that the ensuing five-year renewal period terminate on September 30, 1987, not April 30, 1987. In Count III, Car–X, on a theory of unjust enrichment, sought damages in excess of $20,000.00, an amount which it alleged had been received by Kidd–Heller from Car–X. In Count IV, Car–X alleged that it had prepaid Kidd–Heller five months' rent for which it sought reimbursement.

On May 4, 1987, after a hearing, the district court entered a temporary restraining order prohibiting Kidd–Heller from terminating the lease between the parties. In the present proceeding, Kidd–Heller appeals that order.

On May 6, 1987, Car–X and Mufflers filed an amended complaint. The principal

change was in Count III where they reduced their claim for unjust enrichment to an amount in excess of $18,000.00.

By an amended counterclaim Kidd–Heller sought damages in the total amount of $2,382.00 for premiums paid by her for insurance on the subject property. In addition, Kidd–Heller also alleged that Mufflers in 1977 had made certain changes and alterations to the premises and had destroyed, damaged, or removed certain personal property belonging to her without first obtaining her approval. In this connection, Kidd–Heller sought a declaratory judgment that she and Mufflers entered into a verbal agreement in 1979 whereby in return for her forebearance of filing an action against Mufflers, the latter agreed to compensate her for the destruction of her property in the sum of $100.00 for the first month, and $75.00 per month thereafter through the term of Mufflers' occupancy of the property. It was further alleged that beginning in May, 1979 and continuing through April, 1987, Mufflers paid her $100.00 for one month, and then $75.00 per month thereafter, but that beginning in May, 1987, and continuing thereafter, Mufflers had refused to pay the $75.00 per month. She asked that Mufflers be ordered to continue such monthly payments.

Both parties moved for summary judgment on the issue of which party had the right to possession of the subject property. On July 27, 1987, the district court denied Kidd–Heller's motion and granted Car–X's motion, and judgment to that effect was entered on July 28, 1987. Kidd–Heller in the present proceeding appeals that order.

On January 20, 1988, the district court entered an order denying Car–X's motion for summary judgment on Count III of its complaint, which count, after further amendment, sought the return of $7,300.00 paid by Mufflers to Kidd–Heller in exchange for Kidd–Heller's agreement not to sue Mufflers and Car–X for making unauthorized alterations to the leased premises and removing her property. In support of their motion, Car–X and Mufflers contended that they had a right under the lease to make the alterations in question, and that

since said alterations resulted in an improvement to the premises which would ultimately inure to the benefit of Kidd–Heller, their payment of $100.00 plus $75.00 per month to Kidd–Heller resulted in a "double benefit" to Kidd–Heller. On the other hand, Kidd–Heller contended that those payments were intended to compensate her for the destruction of her property. Based on these arguments, the court found that there was "a factual issue ... relevant to the disposition of [Count III]."

In an ensuing order, entered February 12, 1988, the district court, by way of a case summary, found summary judgment for Car–X on Counts I and II, which had previously been entered, to be appropriate. By that same order the district court reaffirmed its earlier determination that summary judgment was inappropriate for Count III, and also held that Count IV was by that time moot.

On May 19, 1989, Count III and Kidd–Heller's counterclaim relating to insurance coverage were tried to the court. In its Memorandum and Order entered on July 20, 1989, the district court found Kidd–Heller was unjustly enriched in the amount of $7,300.00 and entered judgment in favor of Car–X in that amount. In the present proceeding Kidd–Heller appeals that order.

In its order of July 20, 1989, the district court also entered judgment in favor of Kidd–Heller and against Car–X in the amount of $2,382.00, which amount reimbursed Kidd–Heller for the premiums paid by her for insurance coverage on the subject property when Car–X failed to provide her with evidence that it had already obtained such insurance. Car–X does not appeal that order.

## I. Equitable Relief

■ As indicated by the original pleadings, Car–X initially contended that its written notice given Kidd–Heller on March 19, 1987, constituted valid notice in accord with the terms of its lease with Kidd–Heller since it was the intent of the parties that the first additional term of the lease would not expire until September 30, 1987, and hence the notice was beyond the six-

month period prescribed in the lease. Apparently, this position was abandoned along the way. In any event, the district court held that the first additional period of the lease expired by its own terms on April 30, 1987, and that the notice given on March 19, 1987, was therefore untimely. In this same connection the district court also held that the reference in the letter from Car–X's lawyer to Kidd–Heller's lawyer on June 3, 1986, that Car–X wished "to continue [leasing the property] through the end of [the] last option term in 1992 and beyond," was not a valid exercise by Car–X of its option to renew, since, *inter alia,* the letter was neither served personally on Kidd–Heller nor sent her by certified mail at the place where rent payments were due.

Be all that as it may, somewhere along the line Car–X apparently concluded that it had not made a timely notice to renew, and thereupon asked the district court to give it equitable relief from the lease provision that the option to renew be exercised at least six-months prior to the expiration date of the current leasehold term. The district court agreed that, all things considered, Car–X should not be held to the six-months requirement. In support of its ruling the district court noted that there was no Kansas authority directly bearing on the present fact situation. However, the district judge was of the view that Kansas would follow what he deemed to be the prevailing rule in other jurisdictions [1] that equitable relief may be available to a lessee such as Car–X to the end that the exercise of its option to renew, although untimely, would nonetheless extend the current lease for another five-year period. In reaching this conclusion the district court noted, *inter alia,* that the current five-year leasehold term had not expired when Car–X gave its notice of intent to renew on March 19, 1987; that Kidd–Heller did not contend that she never received a

copy of the June 3, 1986 letter from Car–X's lawyer to her lawyer; that to declare the option as lost would do relatively great harm to Car–X; and that by allowing Car–X to remain a lessee for an additional five years would do relatively little harm to Kidd–Heller.

Kidd–Heller's basic position is that under Kansas law a clear and unambiguous contract may not be altered nor may the performance of a condition be excused under the guise of equitable relief. The district court did not believe that Kansas law was that rigid. Nor do we. In *Nelson v. Robinson,* 184 Kan. 340, 345, 336 P.2d 415, 420 (1959), the Kansas Supreme Court spoke as follows:

We have no quarrel with decisions (citations omitted) cited by defendants, which hold it is not the function of courts to make new contracts for the parties but to enforce them as made. The trouble, from their standpoint, is that *such decisions have no application* to a situation where, by reason of the failure of one of the parties to comply with the terms of a contract, it becomes necessary to either forfeit the contract or in effect do away with it—as the court did in the instant case—*because of existing conditions which would make strict performance with its terms unjust and inequitable* (emphasis added).

In *Gill Mortuary v. Sutoris, Inc.,* 207 Kan. 557, 485 P.2d 1377 (1971), a lessee sued the lessor seeking specific performance of two lease agreements after a futile attempt to exercise his options to renew both leases. The district court dismissed the lessee's action at the conclusion of the lessee's evidence. In so doing, the district court noted, *inter alia,* that the lessee had not only failed to prove that it was entitled to specific performance, but also that the lessee's evidence "is insufficient to establish any right, in equity, to compel the

---

1. In diversity actions governed by state law, "[w]here no state court has addressed clearly the substantive legal issue, federal courts must use their own discretion to anticipate the rule state courts in similar circumstances likely would make." *Herndon v. Seven Bar Flying Serv. Inc.,* 716 F.2d 1322, 1332 (10th Cir.1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). In so doing, federal courts "may consider all resources, including decisions ... of other states, federal decisions, and the general weight and trend of authority." *Hartford v. Gibbons & Reed Co.,* 617 F.2d 567, 569 (10th Cir.1980).

defendants ... to specifically perform said lease agreements." *Id.* at 560, 485 P.2d at 1380. Hence, although the district court in *Gill* refused to grant equitable relief to the lessee, it seemed to recognize that equitable relief may be appropriate under certain circumstances. On appeal, the Kansas Supreme Court affirmed.

We agree with the district court in the instant case that under Kansas law even though a lease is clear and unambiguous, equitable relief may still be granted to relieve a party from strict compliance with one of the clear and unambiguous provisions in that lease. There remains, however, the question of whether the facts and circumstances of the present case warranted the grant of equitable relief. Our attention has not been drawn to any Kansas case with a fact situation akin to the present one. It was in such setting that the district court looked at the law outside of Kansas to resolve the present dispute.

Based on his understanding of the law outside of Kansas concerning the granting of equitable relief from the terms of a clear and unambiguous lease, the district judge concluded that this was an appropriate case for equitable relief. We agree. For a general discussion of this matter, *see* the annotation entitled "Circumstances Excusing Lessee's Failure to Give Timely Notice of Exercise of Option to Renew or Extend Lease" appearing at 27 ALR 4th 266 (1984). *See also* such cases as *Gardner v. HKT Realty Corp.*, 23 Ark.App. 148, 744 S.W.2d 735, 737–38 (1988); *Linn Corp. v. LaSalle Nat'l Bank*, 98 Ill.App.3d 480, 53 Ill.Dec. 885, 887–88, 424 N.E.2d 676, 678–79 (1981); *Ward v. Washington Distrib., Inc.*, 67 Ohio App.2d 49, 425 N.E.2d 420, 422–24

(1980); *Wharf Restaurant, Inc. v. Port of Seattle*, 24 Wash.App. 601, 605 P.2d 334, 340–41 (1979); *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.*, 42 N.Y.2d 392, 366 N.E.2d 1313, 1316–18, 397 N.Y.S.2d 958, 960–63 (1977); *Sosanie v. Pernetti Holding Corp.*, 115 N.J.Super. 409, 416, 279 A.2d 904, 907–908 (1971); and *F.B. Fountain Co. v. Stein*, 97 Conn. 619, 118 A. 47 (1922). *See also,* 1 A. Corbin, *Corbin on Contracts* § 35, at 146–47 (1963); and 1 W. Jaeger, *Williston on Contracts* § 76 n. 4, at 248–49 (3d ed. 1957).

The application of these general principles of equity to the present case warrants the granting of equitable relief to Car–X. We note, as did the district court, that Car–X did exercise its option to renew the lease in clear and unambiguous language on March 19, 1987, at a time when the current five-year term of the lease was still in force and effect, i.e., that term did not expire until April 30, 1987. This distinguishes the present case from those cases where the holder of an option to renew attempts to exercise the option *after* the lease has expired.[2] We also note that Kidd–Heller was apparently made aware by her attorney of the contents of the June 3, 1986 letter from Car–X's counsel. Further, this is not an instance of an intentioned or willful failure to timely renew.

We also agree with the district court that to declare the lease forfeited, and the option to renew lost forever, would cause relatively great harm to Car–X. It should be noted that we are here dealing with commercial property where an apparently profitable business was being conducted and had been conducted for the preceding ten years.[3] Further, Car–X and Mufflers,

---

**2.** Car–X's reliance on *Gill Mortuary v. Sutoris, Inc.*, 207 Kan. 557, 485 P.2d 1377 (1971) and *Standard Oil Co. v. Reed*, 126 Kan. 63, 266 P. 735 (1928) is misplaced. In *Gill*, the leases in question had expired by their own terms prior to the purported attempt to extend them. In *Standard Oil*, there was an option to purchase realty at the expiration of a lease or upon the death of the life tenant, who was also one of the lessors, in the event her death occurred before the expiration of the lease. The life tenant died before the expiration of the lease and the Kansas Supreme Court held that the lessee had failed to exercise his option to purchase at the

time of the life tenant's death, or within a reasonable time thereafter, and that accordingly the option was lost.

**3.** *See Geo. W. Millar & Co. v. Wolf Sales & Serv. Corp.*, 65 Misc.2d 585, 318 N.Y.S.2d 24, 26 (1971), where it was observed that an option to renew a lease is of great value to commercial tenants and that the grave injury to the life of a business implicit in a forfeiture coupled with the lack of prejudice to the landlord "presents a compelling case for invoking the equitable power of the Courts" when a commercial lessee, through oversight, has failed to timely exercise

as indicated, had made certain alterations to the subject property at their own expense, including customizing the property to a commercial enterprise. Also, there was indication that Mufflers had leased certain property adjacent to the subject property which had been incorporated into the business being conducted. Finally, Mufflers had been at this location for about ten years and there was "customer recognition" of Mufflers' location.

We are in further agreement with the district court that in granting Car–X equitable relief and extending the lease for five years Kidd–Heller would not suffer substantial harm. Kidd–Heller, at the time, had taken no substantial steps to lease the premises to another, although she had notified a real estate agent of the situation. Also, the lease agreement provided for an increase in the rental for the last five-year period.

In sum, we are not inclined to disturb the district court's holding that Car–X was entitled to equitable relief from the provision in the lease that the option to renew had to be exercised at least six months prior to the expiration of the current leasehold term.

## II. Unjust Enrichment

■ As indicated, about a month after Kidd–Heller leased the premises to Car–X in April, 1977, Mufflers, Car–X's sub-lessee, made certain changes to the property which apparently resulted in the removal and destruction of certain personal property belonging to Kidd–Heller. The latter did not discover this until some two years later, in 1979. A dispute then arose as to whether these changes and removals were in accord with the two leases with which we are here concerned, i.e., the Hellers' lease with the Tanquarys and Car–X's lease with Kidd–Heller. Kidd–Heller threatened to bring suit and Mufflers, seeking to avoid the expense of litigation, agreed to pay Kidd–Heller $100.00 for one month, and $75.00 per month thereafter for

his right to renew. *See also, Ward v. Washington Distrib., Inc.,* 67 Ohio App.2d 49, 425 N.E.2d 420, 424 (1980); and *Sosanie v. Pernetti Holding*

so long as it remained a tenant if Kidd–Heller would forebear bringing suit. Kidd–Heller agreed and did not bring suit, and Mufflers made the agreed payments from May, 1979 to April, 1987, totalling $7,300.00.

This matter was tried to the court, which held that Mufflers' action in making changes to the subject premises and destroying Kidd–Heller's personal property without first obtaining her permission did not violate either of the two leases. Thus, the district court ordered Kidd–Heller to return the $7,300.00 to Mufflers on the basis that to permit Kidd–Heller to keep the $7,300.00 would result in unjust enrichment to Kidd–Heller. We think this analysis misses the mark.

We are not here really concerned with whether Mufflers' alterations and removal of personal property violated either of the leases. The critical facts are that a dispute between Kidd–Heller and Mufflers concerning these changes and removals did arise, and the dispute was resolved by the parties by a verbal agreement which both parties adhered to for the succeeding seven years, the verbal agreement being that in return for Kidd–Heller's forbearance in bringing suit, Mufflers would make certain monthly payments.

The principle that forbearance to sue may constitute adequate consideration for a contract is well established in Kansas. *EVCO Distrib., Inc. v. Brandau,* 6 Kan. App.2d 53, 626 P.2d 1192, 1196 (1981). *See also, Frets v. Capitol Fed. Sav. & Loan Ass'n,* 238 Kan. 614, 621, 712 P.2d 1270, 1276 (1986); and *Snuffer v. Westbrook,* 134 Kan. 793, 795, 8 P.2d 950, 951 (1932). In *Frets,* the Kansas Supreme Court recognized that as a general rule the relinquishment of a legal right, or a contract right or privilege is sufficient consideration for a promise. 238 Kan. at 621, 712 P.2d at 1276. Similarly, in *Snuffer,* the Kansas Supreme Court stated that a forbearance to prosecute or defend a claim or action is usually sufficient consideration for a con-

*Corp.,* 115 N.J. Super. 409, 416, 279 A.2d 904, 907–908 (1971).

tract based thereon, unless the claim or defense is obviously invalid, worthless, or frivolous. 134 Kan. at 795, 8 P.2d at 951.

However, forbearance of the right to institute legal action does not carry with it the further requirement that the party must also show that he would have prevailed in such litigation if it had been filed. He need only show that he gave up his right to file a non-frivolous claim. Such, under Kansas law, is adequate consideration to support the promise Mufflers made in May, 1979, to pay Kidd–Heller $100.00 for one month, and $75.00 per month thereafter for the balance of the lease. *See Reed v. Hess*, 239 Kan. 46, 716 P.2d 555, 560 (1986); *EVCO*, 6 Kan.App.2d 53, 626 P.2d at 1196–97; and *Schiffelbein v. Sisters of Charity of Leavenworth*, 190 Kan. 278, 280, 374 P.2d 42, 45 (1962).

In *Schiffelbein*, the Kansas Supreme Court said that "[f]orbearance to sue can be good consideration for a promise, regardless of the actual validity of the claim, if the one who forbears has a reasonable and sincere belief in its validity." 190 Kan. at 280, 374 P.2d at 45 (quoted in *Reed*, 239 Kan. 46, 716 P.2d at 560; and in *EVCO*, 6 Kan.App.2d 53, 626 P.2d at 1197). The Schiffelbein court explained that "[t]he reality of the claim which is given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concession." 190 Kan. at 280, 374 P.2d at 45 (quoting 12 Am.Jur. § 87, at 581 (1938).

The record is devoid of any evidence that Kidd–Heller's threatened action against Mufflers was invalid, worthless, or frivolous. Rather, every indication in the record is that Kidd–Heller had a reasonable and sincere belief in the validity of her claim against Mufflers. In this regard, we note that it is apparently conceded that Mufflers disposed of Kidd–Heller's guttering, lights, and fence without first obtaining her permission. Further, the provision in the lease between the Hellers and the Tanquarys concerning improvements, changes and alterations to the leased property, which was later incorporated by reference into Car–X's lease with Kidd–Heller, is less than clear and unambiguous. In our view, this provision could be read as requiring Car–X or its sublessee, Mufflers, to obtain Kidd–Heller's approval before making any improvements, changes or alterations, regardless of their nature (i.e., interior or exterior), if the cost of such improvements, changes or alterations exceeded $10,000.00. Under such an interpretation, Mufflers would have been required to get Kidd–Heller's permission before making the improvement and removals in question.

■ We also reject the district court's suggestion that since the May, 1979 agreement, whereby Mufflers promised to pay Kidd–Heller $100.00 for the first month and $75.00 each month thereafter in return for Kidd–Heller's forbearance to sue, was not made a written addendum to Car–X's lease with Kidd–Heller, as required by Section 21 of that lease, it was not legally binding on the parties. Section 21 of the lease agreement between Kidd–Heller and Car–X provided that "no modification of this lease shall be binding upon the parties unless evidenced by an agreement in writing...." However, it is well settled in Kansas that "the terms of a written contract may be varied, modified, waived, annulled, or wholly set aside by any subsequently executed contract, whether such subsequently executed contract be in writing or in parol." *See Coonrod & Walz Const. Co. v. Motel Enterprises, Inc.*, 217 Kan. 63, 535 P.2d 971, 979–80 (1975); *Fast v. Kahan*, 206 Kan. 682, 481 P.2d 958, 961 (1971); *Gibbs v. Erbert*, 198 Kan. 403, 424 P.2d 276, 283 (1967); and *Bailey v. Norton*, 178 Kan. 104, 283 P.2d 400, 403 (1955). This is true even when the written contract contains a provision purporting to require that subsequent modifications be evidenced by a writing. *See Nichols & Shepard Co. v. Maxon*, 76 Kan. 607, 92 P. 545, 546 (1907). *Hoard v. Jones*, 119 Kan. 138, 237 P. 888, 895–96 (1925); and *Bailey*, 178 Kan. 104, 283 P.2d at 404–405. *See also*, 6 A. Corbin, *Corbin on Contracts* § 1295, at 206 (1962); 4 W. Jaeger, *Williston on Contracts* § 591, at 203 (3d ed. 1961); and 15 W. Jaeger, *Williston on Contracts* § 1828, at 496 (3d ed. 1972).

The judgment in favor of the plaintiffs, Car–X and Mufflers, and against Kidd–Heller for unjust enrichment (Count III), in the amount of $7,300.00 is reversed. Otherwise, the judgments are affirmed.